# EXHIBIT  1

IN THE MATTER OF THE CLAIM(S) OF

KRITTIKA BISWAS,                                    **NOTICE OF CLAIM**

        *Plaintiff-Claimant,*

    -against-

(1) THE CITY OF NEW YORK, (2) NEW YORK CITY
DEPARTMENT OF EDUCATION, (3) HON. DENNIS M.
WALCOTT, in his official capacity as CHANCELLOR
of the NEW YORK CITY DEPARTMENT OF EDUCATION
(albeit, at the time of the misconduct alleged, Cathleen P. Black
was serving as Chancellor), (4) HOWARD KWAIT individually
and in his official capacity as a PRINCIPAL within and for
the NEW YORK CITY DEPARTMENT OF EDUCATION
at JOHN BOWNE HIGH SCHOOL, (5) JAMIE KIM-ROSS
individually and in her capacity as a TEACHER within and for
the NEW YORK CITY DEPARTMENT OF EDUCATION
at JOHN BOWNE HIGH SCHOOL, (6) ELAYNA KONSTAN,
individually and in her official capacity as CHIEF EXECUTIVE
OFFICER of the NEW YORK CITY DEPARTMENT OF
EDUCATION OFFICE OF SCHOOL AND YOUTH
DEVELOPMENT, (7) JOHN/JANE DOE NEW YORK
CITY DEPARTMENT OF EDUCATION PERSONNEL
## 1-10, so named as their identities have yet to be established,
involved in the sham investigation, unlawful arrest and
detention and unlawful suspension of Krittika Biswas,
(8) HON. RAYMOND W. KELLY, in his official capacity as
COMMISSIONER of the NEW YORK CITY POLICE
DEPARTMENT, (9) POLICE OFFICER "JANE DOE"
MALDONADO (107 Precinct, possible shield # 10559),
individually and in her official capacity as a POLICE OFFICER
within and for the NEW YORK CITY POLICE DEPARTMENT,
so named because her exact identity has yet to be confirmed,
(10) POLICE OFFICER LARRY GRANSHAW, individually
and in his official capacity as a POLICE OFFICER within
and for the NEW YORK CITY POLICE DEPARTMENT,
and (11) JOHN/JANE DOE POLICE PERSONNEL, so named
as their identities have yet to be established, involved in the
unlawful arrest and detention of Krittika Biswas,

        *Defendants-Respondents.*

RECEIVED
2011 MAY - 6  PH 12: 26
CORPORATION COUNSEL
CENTRAL RECORDS FACILITY
BUR. INFORMATION SYSTEM

1    TO:   City of New York
2             Office of the Comptroller
3             One Centre Street, Room 1225
4             New York, NY 10007
5
6             New York City Department of Education
7             52 Chambers Street, Room 320, B4
8             New York, NY 10007
9
10       PLEASE TAKE NOTICE that a claim and demand is hereby made, under Federal
11 and State law with full reservation of right to file an action in federal court, for reasonable
12 damages, compensatory and punitive, along with attorneys' fees for the prevailing
13 claimant/plaintiff. Pursuant to G.M.L. § 50-e(2)(4), The compensatory damages sought,
14 so far as currently practicable, are not less than $500,000.00. The punitive damages
15 sought, so far as currently practicable, are not less than $1,000,000.00.
16
17 NAME AND POST OFFICE ADDRESS OF CLAIMANT:
18 Krittika Biswas, ███████████████████████ Flushing, NY 11355.
19
20 At all times herein mentioned, Krittika Biswas is a citizen of India and lawfully present
21 and resident in the United States, State of New York, City of New York. Krittika Biswas
22 is the daughter of the Vice-Consul in the Consulate General of the sovereign nation of
23 India, assigned to the Consulate General of India in New York City. Krittika Biswas was
24 born on ████████ 1992, and during the occurrences described herein was 18 years of
25 age, resided with her parents, including the Vice-Consul, and was a full time secondary
26 school student enrolled in honors classes at John Bowne High School, 63-25 Main Street,
27 Flushing, NY 11367, an educational facility controlled, maintained and operated by the
28 New York City Department of Education. At all times herein described, Krittika Biswas
29 was entitled to diplomatic immunity from arrest and detention, <u>despite</u> her actual
30 innocence. This claim is made because Krittika Biswas was wrongly arrested and
31 detained without probable cause, and while she was actually innocent. This claim was
32 not made simply because of any immunity from arrest and detention.
33
34 NAME AND POST OFFICE ADDRESS OF ATTORNEYS FOR CLAIMANT:
35       The Law Firm of Ravi Batra, P.C.
36       The Batra Building
37       142 Lexington Avenue
38       New York, NY 10016
39       212-545-1993

40    NATURE OF THE CLAIM:
41
42    Claim is hereby made for the constitutional and tortious physical and emotional
43    injuries inflicted upon Krittika Biswas, as a result of a sham investigation of offensive e-
44    mails being transmitted to defendant-respondent New York City Department of Education
45    ["DOE"] teacher Jamie Kim-Ross - when said e-mails were not transmitted by, or on
46    behalf of Krittika Biswas, there was no evidence associating the e-mails to Krittika
47    Biswas, another student was ultimately determined to be the author and sender of the
48    illicit e-mails - thus Krittika Biswas was actually innocent, and Krittika Biswas was
49    immune from arrest, detention and prosecution because of her diplomatic status [Exhibit
50    1].  The charges stemming from this wrongful, illegal and unconstitutional arrest were
51    dismissed by the Queens County District Attorney's Office prior to Krittika Biswas being
52    arraigned upon same, and the file sealed [Exhibit 2].  We are grateful to the distinguished
53    prosecutor, the Hon. Richard A. Brown, for putting a stop to this macabre malicious
54    misconduct by the defendants.  Judge Brown has served as counsel to Governor Hugh
55    Carey, 16 years as a member of the judiciary, including ten years as an Associate Justice
56    of the Supreme Court of the State of New York, Appellate Division, Second Department,
57    and recently celebrated 50 years of distinguished service to hard working New Yorkers by
58    honoring the rule of law and protecting public safety.
59
60    The initial warrantless detention of Krittika Biswas was made by the DOE, within
61    John Bowne High School beginning at approximately 9:45 a.m. on February 8, 2011,
62    leading  to a warrantless arrest and unlicensed detention of Krittika Biswas on February 8,
63    2011, by the New York City Police Department ["NYPD"], including police
64    officers"JANE DOE" Maldonado (107 Precinct, possible shield # 10559), acting
65    individually and in her official capacity as a NYPD Police Officer, and Larry Granshaw
66    (sp), acting individually and in his official capacity as a NYPD Police Officer, at the
67    insistence of the DOE and its representatives, including defendants-respondents, the very
68    arrogant and nasty Howard Kwait, acting individually and in his official capacity as a
69    DOE principal at John Bowne High School and the racist Jamie Kim-Ross, acting
70    individually and in her official capacity as a DOE teacher at John Bowne High School
71    [Exhibit 3].  Said arrest and detention was without probable cause, and without the
72    consent of Krittika Biswas, and in violation of state, federal and international law, as
73    Krittika Biswas possesses diplomatic immunity.  Said unconstitutional, unlawful and
74    illegal arrest and detention involved unnecessary and painful tight handcuffing that
75    caused substantial pain, redness and swelling, refusal by the police to permit Krittika
76    Biswas to urinate, for hours, as extra-judicial punishment, and unlicensed detention in
77    police custody for approximately 28 hours (2/8/11 at approximately 9:45 a.m. to 2/9/11 at
78    approximately 2:30 p.m.).

3

79            Thereafter, notwithstanding that there was no evidence to support any claim
80    against Krittika Biswas, defendants-respondents DOE and its agents and representatives,
81    including Kwait and Kim-Ross, caused Krittika Biswas to be suspended from her
82    academically challenging and enriched program at John Bowne High School by
83    defendant-respondent Elayna Konstan, acting individually and in her official capacity as
84    Chief Executive Officer of the DOE Office of School and Youth Development, and
85    administratively transferred to an alternative placement site, to wit: the  socially and
86    academically deficient R. F. Wagner, Jr. High School, and to face DOE disciplinary
87    charges without any evidence to support same [Exhibit 4].   Included in Ex. 4 is a letter
88    dated February 11, 2011, from Krittika Biswas' father, Vice Consul Debashish Biswas,
89    retaining the undersigned on behalf of Krittika Biswas.  The DOE defendants-respondents
90    falsely asserted that Krittika Biswas was the author of e-mails because, as they claimed,
91    the Internet Protocol Address ["IP Address"] associated with the e-mails was assigned to
92    her apartment building - notwithstanding that there are in excess of 200 apartments in that
93    building.  Included in the materials provided by the DOE, and as part of Ex. 4, herein, is a
94    list of students residing in Krittika Biswas building (redacted on behalf of Krittika Biswas
95    to protect the identities of students).  Moreover, the DOE relied upon the wholly
96    conclusory, unsupported and false handwritten allegations of defendant-respondent Jamie
97    Kim-Ross (also part of Ex. 4, herein) who wholly, and maliciously, neglected to inform
98    DOE disciplinary staff that she had previously personally written a merit based
99    recommendation on behalf of plaintiff-claimant Krittika Biswas in or about October
100   2010, and e-mailed it from her personal e-mail account to her DOE e-mail account.
101   Moreover, defendant-respondent Kim-Ross, sought to rely on "Facebook"
102   postings associated with Krittika Biswas "facebook.com" account, referenced by Kim-
103   Ross, which were, at worst, critical of Kim-Ross as a teacher, but in no way associated
104   Krittika Biswas with the offensive e-mails that someone else had sent to Kim-Ross.
105
106           Kim-Ross and DOE's claims were wholly debunked with forensic evidence
107   provided by expert software engineer Gleb Liferenko, who determined that the IP
108   Address associated with the home of Krittika Biswas was provided and serviced by the
109   network of Road Runner LLC, while the offensive e-mails were transmitted from an IP
110   Address associated with the network of Earthlink, Inc. The expert affidavit submitted by
111   Mr. Liferenko is appended hereto [Exhibit 5], as is Mr. Liferenko's invoice for expert
112   services rendered, in the amount of $3,363.20 [Exhibit 6].  These were expenses incurred
113   on behalf of Krittika Biswas solely because the DOE and its agents had no consideration
114   for the facts.  Critically, these disciplinary charges, founded upon falsities to begin with,
115   were ultimately dismissed, with the suspension expunged from Krittika Biswas' records.
116   A letter confirming such dismissal and expungement, along with related e-mails, are
117   appended hereto [Exhibit 7] when it was determined that plaintiff-claimant Krittika
118   Biswas was able to prove that when the allegedly offensive e-mail were sent to defendant-

119  respondent Kim-Ross, Krittika Biswas was at various stores at the Skyview Center
120  shopping mall and at a Western Beef store on February 6, 2011, in the company of her
121  friend  Deboleena Kanjilal, who provided an affidavit to be submitted in the DOE
122  disciplinary process along with receipts confirming store purchases [Exhibit 8].
123  Additionally, while at Skyview mall, Krittika also came across Ravichandran
124  Kalyanasundaram and Bhoop Singh Bisht, colleagues of her father from the Consulate
125  General of India, who also provided affidavits and receipts confirming their presence at
126  the mall [Exhibit 9].  Moreover, and even more damning against the defendants-
127  respondents, it was another student, Shang Ming, who wrote and transmitted all of the
128  offensive e-mails, with absolutely no involvement by Krittika Biswas, and S███ M██
129  ultimately confessed to same.

131      Notwithstanding that S███ M██ actually wrote and transmitted e-mail messages
132  which defendant-respondent Kim-Ross deemed offensive, Kim-Ross and the DOE
133  declined to press criminal charges against that student, or to pursue DOE disciplinary
134  action against him, because he is of Oriental-Asian decent, believed to be of Chinese
135  ancestry, and defendant-Respondent Kim-Ross is also of Oriental-Asian decent, believed
136  to be of Chinese or Korean ancestry, and defendant-respondent Kim-Ross has repeatedly
137  favored students of Oriental-Asian decent, to the detriment of other students - including
138  Krittika Biswas, who is Indian and thus of Southeast Asian decent.  Such favoritism of
139  students of the Oriental-Asian ethnic background, to the detriment of other students of
140  other ethnic backgrounds, constituted improper prohibited ethnicity based discrimination.
141  This discrimination was evident in class by Kim-Ross, and in her failing to press charges
142  against S███ M██ despite his absolute guilt in sending the offending e-mails.

144  TIME WHEN THE CLAIM AROSE: at approximately 9:45 a.m. on February 8, 2011
145  through approximately 2:30 p.m. on February 9, 2011 (unlawful arrest, detention and
146  discrimination); and, from February 10, 2011 through March 15, 2011 (improper
147  suspension, disciplinary action until withdrawal of charges and suspension by the
148  Superintendent and expungement of any record, and discrimination), and to the present
149  (discrimination).

151  PLACE WHERE THE CLAIM AROSE: John Bowne High School, 63-25 Main Street,
152  Flushing, NY 11367; NYPD vehicles used to transport Krittika Biswas from John Bowne
153  High School to the NYPD 107th Precinct and from the 107th Precinct Station House to
154  Queens Central Booking; NYPD 107th Precinct Station House, 71-01 Parsons Boulevard,
155  Flushing, NY 11365; Queens Central Booking, 125-01 Queens Boulevard, Kew Gardens,
156  NY 11415; R. F. Wagner High School, 47-07 30th Place, Long Island City, NY 11101;
157  DOE Queens Office of Student Suspensions, 28-11 Queens Plaza North, Long Island
158  City, NY 11101.

5

159      MANNER IN WHICH THE CLAIM AROSE: <u>See above</u>.  Additionally, pursuant to
160      Articles 40,[1] 41[2] and 53[3] of the Vienna Convention on Consular Relations (1963), of

---

[1]Article 40 of the Vienna Convention on Consular Relations (1963), entitled "Protection of consular officers", provides that

> The receiving State shall treat consular officers with due respect and shall take all appropriate steps to prevent any attack on their person, freedom or dignity.

[2]Article 41 of the Vienna Convention on Consular Relations (1963), entitled "Personal inviolability of consular officers", provides that

> 1.      Consular officers shall not be liable to arrest or detention pending trial, except in the case of a grave crime and pursuant to a decision by the competent judicial authority.
>
> 2.      Except in the case specified in paragraph 1 of this article, consular officers shall not be committed to prison or be liable to any other form of restriction on their personal freedom save in execution of a judicial decision of final effect.
>
> 3.      If criminal proceedings are instituted against a consular officer, he must appear before the competent authorities. Nevertheless, the proceedings shall be conducted with the respect due to him by reason of his official position and, except in the case specified in paragraph 1 of this article, in a manner which will hamper the exercise of consular functions as little as possible. When, in the circumstances mentioned in paragraph 1 of this article, it has become necessary to detain a consular officer, the proceedings against him shall be instituted with the minimum of delay.

[3]Article 53 of the Vienna Convention on Consular Relations (1963), entitled "Beginning and end of consular privileges and immunities", provides that

> 1.      Every member of the consular post shall enjoy the privileges and immunities provided in the present Convention from the moment he enters the territory of the receiving State on proceeding to take up his post or, if already in its territory, from the moment when he enters on his duties with the consular post.

161    which both the United States and India are signatories, as Krittika Biswas is the child of
162    the Vice-Consul, residing in the same home with the Vice-Consul, and  was enrolled in
163    secondary school, Krittika Biswas was entitled to the privileges and immunities afforded
164    the Vice-Consul, including immunity from arrest and detention.

---

2.    Members of the family of a member of the consular post forming part of his household and members of his private staff shall receive the privileges and immunities provided in the present Convention from the date from which he enjoys privileges and immunities in accordance with paragraph 1 of this article or from the date of their entry into the territory of the receiving State or from the date of their becoming a member of such family or private staff, whichever is the latest.

3.    When the functions of a member of the consular post have come to an end, his privileges and immunities and those of a member of his family forming part of his household or a member of his private staff shall normally cease at the moment when the person concerned leaves the receiving State or on the expiry of a reasonable period in which to do so, whichever is the sooner, but shall subsist until that time, even in case of armed conflict. In the case of the persons referred to in paragraph 2 of this article, their privileges and immunities shall come to an end when they cease to belong to the household or to be in the service of a member of the consular post provided, however, that if such persons intend leaving the receiving State within a reasonable period thereafter, their privileges and immunities shall subsist until the time of their departure.

4.    However, with respect to acts performed by a consular officer or a consular employee in the exercise of his functions, immunity from jurisdiction shall continue to subsist without limitation of time.

5.    In the event of the death of a member of the consular post, the members of his family forming part of his household shall continue to enjoy the privileges and immunities accorded to them until they leave the receiving State or until the expiry of a reasonable period enabling them to do so, whichever is the sooner.

165    On or about February 8, 2011, Krittika Biswas was the subject of an unjust, illegal,
166  warrantless and unconstitutional arrest, by members of the New York City Police
167  Department ["NYPD"], including, but not limited to, defendants respondents Police
168  Officer "Jane Doe" Maldonado, believed to then be assigned to the 107 NYPD Precinct,
169  and possibly assigned shield # 10559 and Police Officer Larry Granshaw, also believed to
170  then be assigned to the 107 NYPD Precinct, at the insistence, request, and direction of the
171  New York City Department of Education ["DOE"], including, but not limited to
172  defendants-respondents Howard Kwait, principal of John Bowne High School and Jamie
173  Kim-Ross, a mathematics teacher at John Bowne High School.
174
175    Said arrest occurred after defendant-respondent Jamie Kim-Ross received what she
176  perceived to be obscene e-mails.  Krittika Biswas did not send these e-mails, nor did she
177  have any involvement in their transmission.  Representatives of the DOE allegedly
178  performed an investigation which revealed that the e-mail message originated from an IP
179  Address not associated with Krittika Biswas.  Nevertheless, DOE representatives insisted
180  that the IP address was associated with someplace within the large apartment building
181  that Krittika Biswas resides in with her family, including the Vice-Consul, and thus
182  insisted that the NYPD arrest and detain Krittika Biswas, which they did, without
183  probable cause, on February 8, 2011.
184
185    Just prior to her arrest and detention, Krittika Biswas was called from her second
186  period class, at approximately 9:45 a.m., on February 8, 2011, and directed by Naomi
187  Eutsey, Assistant Principal of Security at John Bowne High School to the Assistant
188  Principal's Office ["AP Office"].  While in the AP Office Krittika Biswas was informed
189  by Guidance Counselor Lauren Prettitore that defendant-respondent Jamie Kim-Ross
190  received an additional obscene e-mail which was sent on February 6, 2011 at 1:06 p.m.
191  and that police were coming to speak with Krittika Biswas about such e-mails.
192
193    Upon their arrival, the male arresting/detaining officer, believed to be defendant-
194  respondent Granshaw demanded that Krittika Biswas confess to transmitting the obscene
195  e-mails and advised Krittika Biswas that should she not confess he would handcuff her
196  and take her, in substance, "to jail with prostitutes and people with HIV."  Because
197  Krittika Biswas did not send and obscene e-mail, she refused to confess, at which time the
198  male NYPD officer, acting individually, and under color of law, tightly applied handcuffs
199  to Krittika Biswas wrists causing Krittika Biswas substantial pain which she reported to
200  the arresting/detaining officers.  While Krittika Biswas remained handcuffed, the male
201  NYPD officer again began to interrogate Krittika Biswas, and she continued to deny any
202  involvement with the transmission of any obscene e-mails.

203    The NYPD officers who arrested/detained Krittika Biswas did not provide her with
204 her warnings as Constitutionally required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) -
205 yet nevertheless the police spoke with Krittika Biswas and inquired about her use of
206 computers to send messages in an attempt to obtain incriminating statements from
207 Krittika Biswas - notwithstanding that she had committed no crime and there was no
208 license to arrest or detain her.
209
210    While still detained against her will, with handcuffs affixed by the male NYPD
211 officer still latched upon her wrists, Krittika Biswas invoked diplomatic immunity <u>and</u>
212 requested that her father, the Vice-Consul, or the Indian Consulate be informed of her
213 arrest and detention; however, such invocation was ignored by the arresting and detaining
214 officers - as well as the DOE.  In substance, Krittika Biswas was wrongly informed by the
215 NYPD officers that she was not entitled to any immunity protection as only her father, as
216 the diplomat, was entitled to same.    Moreover, pursuant to Article 36(1)(b) of the
217 Vienna Convention on Consular Relations,[4] if a foreign national is detained, upon request
218 "the competent authorities of the receiving State shall, without delay, inform the consular
219 post of the sending State" of such detention.  Morever, Article 36(1)(b) further requires
220 the detaining authorities to inform the detained foreign national of his or her rights
221 pursuant to Article 36.[5]

---

[4]Article 36 of the Vienna Convention on Consular Relations (1963), provides that

> 1(b).    With a view to facilitating the exercise of consular
> functions relating to  nationals of the sending State: if he so
> requests, the competent authorities of the receiving State shall,
> without delay, inform the consular post of the sending State if,
> within its consular district, a national of that State is arrested or
> committed to prison or to custody pending trial or is detained in
> any other manner. Any communication addressed to the consular
> post by the person arrested, in prison, custody or detention shall be
> forwarded by the said authorities without delay. The said
> authorities shall inform the person concerned without delay of his
> rights under this subparagraph.

[5]Article 36 of the Vienna Convention on Consular Relations (1963), entitled
"Communication and contact with nationals of the sending State" provides that

> 1.    With a view to facilitating the exercise of consular functions
> relating to  nationals of the sending State:

9

222   Had these NYPD officers received proper training and supervision regarding the
223   practical and legal consequences of diplomatic immunity, and of the arrest and detention
224   of nationals of other countries, particularly in the melting pot that is New York City,
225   where many immigrants call their homes, and where diplomatic officers of many nations
226   throughout the world maintain official offices, such errors could have, and should have
227   been avoided to prevent an unintended international incident or an unintended insult (*see
228   e.g.*, the recent demand by the United States of Pakistan to give diplomatic immunity to
229   CIA contractor Raymond Davis). The arresting/detaining officers then falsely informed
230   Krittika Biswas that she was going to be taken for questioning and then released.
231
232   Only after delay, post Krittika Biswas' complaint of pain, did another NYPD
233   officer release the handcuffs, evidencing redness and bruising to Krittika Biswas' wrists.
234   Thereafter, handcuffs were reapplied, but less tightly, resulting in pain - but less severe
235   then before.  However, once the police arrived at the DOE representatives' insistence,

---

(a) consular officers shall be free to communicate with nationals of
the sending State and to have access to them. Nationals of the sending State shall
have the same freedom with respect to communication with and access to consular
officers of the sending State;

(b) if he so requests, the competent authorities of the receiving
State shall, without delay, inform the consular post of the sending State if, within
its consular district, a national of that State is arrested or committed to prison or to
custody pending trial or is detained in any other manner. Any communication
addressed to the consular post by the person arrested, in prison, custody or
detention shall be forwarded by the said authorities without delay. The said
authorities shall inform the person concerned without delay of his rights under this
subparagraph;

(c) consular officers shall have the right to visit a national of the
sending State who is in prison, custody or detention, to converse and correspond
with him and to arrange for his legal representation.  They shall also have the right
to visit any national of the sending State who is in prison, custody or detention in
their district in pursuance of a judgement. Nevertheless, consular officers shall
refrain from taking action on behalf of a national who is in prison, custody or
detention if he expressly opposes such action.

2.    The rights referred to in paragraph 1 of this article shall be
exercised in conformity with the laws and regulations of the receiving State,
subject to the proviso, however, that the said laws and regulations must enable full
effect to be given to the purposes for which the rights accorded under this article
are intended.

236   Krittika Biswas was not free to go, and remained detained against her will.   Krittika
237   Biswas remained in the custody of the NYPD at John Bowne High School until
238   approximately 12:30 p.m., at which time she was transported by the NYPD to the precinct
239   station house.
240
241          The NYPD officers who arrested/detained Krittika Biswas placed her in a
242   detention cell wherein she was not permitted to use restroom facilities, notwithstanding
243   repeated requests for access to same in order to evacuate human waste.  Krittika Biswas
244   remained confined in the detention cell, against her will, from approximately 1:00 p.m.
245   through approximately 3:30 p.m..  While at the precinct station house Krittika Biswas was
246   fingerprinted and photographed, notwithstanding she had repeatedly invoked both her
247   absolute innocence and her immunity.  At no time was Krittika Biswas permitted to
248   directly notify her consular representatives of her arrest and detention.
249
250          Thereafter, Krittika Biswas was again handcuffed by NYPD personnel and
251   transported  to Queens Central Booking, where she remained in the custody of the NYPD.
252   Kritka Biswas remained confined at Central Booking from approximately 3:45 p.m. on
253   February 8, 2011 through approximately 2:30 p.m. on February 9, 2011.
254
255          While at central booking Krittika Biswas was finally provided with her *Miranda*
256   warnings, notwithstanding that prior interrogation attempts took place.  At approximately
257   9:00 p.m. on February 8, 2011, Krittika Biswas was taken to a room by two plainclothes
258   officers she believed to be detectives, and interrogated on videotape.  Krittika Biswas
259   again truthfully denied any involvement with the transmission of offensive e-mails, or any
260   knowledge as to who sent them.
261
262          While Krittika Biswas remained detained at Queens Central Booking,
263   representatives of the Consulate General of India in New York City informed the NYPD
264   that Krittika Biswas maintained diplomatic immunity; however, no efforts were made to
265   verify the representation or to release Krittika Biswas from what was illegal and wrongful
266   detention.
267
268          On February 9, 2011, the undersigned attorney appeared at the Office of Queens
269   County District Attorney Hon. Richard A. Brown, on behalf of Krittika Biswas and
270   presented a *Note Verbale* confirming Krittika Biswas diplomatic status, and more
271   importantly, asserting her actual innocence and the incredible ludicrousness of the
272   school's "proof" predicated upon the IP Address "for the building"!  District Attorney
273   Brown and his staff expeditiously reviewed the circumstances, including, confirming
274   Krittika Biswas' diplomatic immunity and thereafter dismissed all charges against
275   Krittika Biswas and directed her immediate release from custody.

276    Thereafter, notwithstanding the wholesale lack of evidence associating Krittika
277 Biswas to any offensive e-mail, defendant-respondent Howard Kwait, individually and in
278 his capacity as a Principal of John Bowne High School suspended Krittika Biswas -
279 compelling her to attend another school, which was socially and academically deficient.
280 Furthermore, in an attempt to provide support for the baseless allegations made against
281 Krittika Biswas, defendant-respondent Jamie Kim-Ross made false representations by
282 omissions in documents she provided in support of DOE disciplinary charged brought
283 against Krittika Biswas, including a failure to acknowledge that she herself had
284 previously written a letter of recommendation for Krittika Biswas, while instead leaving
285 the impression that she had never done same - as a fabrication of a motive for Krittika
286 Biswas.
287
288    The e-mail which spurred the illegal arrest and detention of Krittika Biswas was
289 transmitted on February 6, 2011, at approximately 1:06 p.m., when Krittika Biswas was
290 nowhere near a computer. Rather, the evidence demonstrated that Krittika Biswas was at
291 various stores, including Target and B.J.'s at the Skyview Center shopping mall, 40-24
292 College Point Boulevard, Flushing, NY 11354.  Furthermore, Krittika Biswas was
293 accompanied by a friend while at the Skyview Center, and while at the shopping mall she
294 also came across colleagues of her father from the Consulate General of India in New
295 York City.
296
297    Krittika Biswas was forced to mount a defense to the sham disciplinary charges
298 instituted by the DOE, including defendants-respondents Kwait and Kim-Ross, which
299 were based solely on supposition and false interpretations of evidence.  Such defense by
300 Krittika Biswas included retention of the undersigned attorney, as well as a computer
301 forensics expert, to prove what Krittika Biswas had been saying all along: that she did not
302 write or transmit the e-mail messages which were the subject of the unlawful arrest,
303 suspension and disciplinary actions.
304
305    Notwithstanding appearances by the undersigned counsel for Krittika Biswas, with
306 all witnesses and all evidence then-available, at DOE's suspension hearing facility,
307 including on March 11, 2011, the DOE was unable to proffer a case [Exhibit 10] - and
308 Dean John Tsapelas, acting as the disciplinary "prosecutor" for DOE lied, claiming to
309 Krittika Biswas' undersigned counsel that the hearing could not proceed that day because
310 of a death in the family of a DOE witness - when no such death had occurred.  Indeed, in
311 detrimental reliance, DOE's supervising counsel, Emil Micha, communicated the need to
312 adjourn the disciplinary hearing due to a death on the school's side. Notwithstanding
313 DOE's unwillingness to proceed, the undersigned, on behalf of Krittika Biswas, who had
314 - and has - nothing to hide, proffered our forensic expert information to DOE that very
315 day, and sought subpoenas for the testimony of witnesses from Target and BJ's

316  Wholesale Club at Skyview mall to further confirm Krittika's presence [Exhibit 11].
317  Notwithstanding repeated requests, orally, and in writing [Exhibit 12], the transcript from
318  that March 11, 2011 DOE disciplinary appearance - for sham charges ultimately
319  dismissed [Ex. 7] has not been provided to the undersigned, on behalf of Krittika Biswas.
320
321      Ultimately, another student, of Oriental-Asian heritage, S███ M██, admitted to
322  having authored and transmitted the offensive e-mails; however, because this student was
323  of similar ethnic background to defendant-respondent Kim-Ross, notwithstanding
324  evidence and a confession proving that S███ M██ had sent the offensive e-mails,
325  defendant-respondent Kim-Ross declined to press criminal charges, and the DOE, treating
326  him differently than Krittika Biswas, pursued only suspension.
327
328      During the period of time that Krittika Biswas was enrolled in defendant-
329  respondent Kim-Ross' calculus class at John Bowne High School, she frequently was
330  subjected to race/ethnicity based discrimination.  Defendant-Respondent Kim-Ross
331  overtly favored students of Oriental-Asian ethnic backgrounds, to the detriment of other
332  students, including Krittika Biswas who is Indian, and thus of Southeast Asian heritage.
333  Furthermore, notwithstanding that there was absolutely no evidence to associate Krittika
334  Biswas with the authoring or transmission of any offensive e-mail, the DOE, spearheaded
335  by defendants-respondents Kwait and Kim-Ross, pursued an offensive course of conduct
336  against Krittika Biswas,[6] resulting in an unwarranted and illegal arrest and detention,
337  unwarranted suspension from school and baseless disciplinary charges, all of which
338  damaged Krittika Biswas physically, emotionally, and financially - including costs for the
339  computer forensic expert [Exs. 5, 6] and a substantial amount incurred as and for legal
340  fees incurred in defense of the sham disciplinary and arrest charges.
341
342      While academic freedom is enhanced by the principles of tenure, however, the
343  colossal misconduct of Jamie Kim-Ross and, *inter alia*, the arrogant principal Howard
344  Kwait, supports the elimination of the current "LIFO" (Last In First Out) law, for they
345  have caused a loss to the taxpayers of the City of New York and embarrassed all
346  New Yorkers worldwide.  It is a matter of historical fact that President Obama invited India's
347  Prime Minister, Dr. Manmohan Singh, as the first State guest of these United States and
348  then followed up with his historic statement to the joint session of Indian Parliament of
349  November 2010 as evidence of the warm and strengthened bonds between the United
350  States and India.   Mayor Michael Bloomberg and new DOE Chancellor Dennis Walcott,
351  who is intimately steeped in what is needed to make New York City children get a better

---

[6]Predicated upon constitutional malice, illegal discrimination and violation of sundry
federal, state and city laws, and the criminally stupid: IP Address "for the building."

13

352  education, ought to consider the termination from employment of Howard Kwait and
353  Jamie Kim-Ross.  False charges and painful suspensions predicated upon scientifically
354  impossible IP addresses "for buildings" belongs in "Alice in Wonderland" rather than the
355  accepted practice in New York City schools.
356
357  ITEMS OF DAMAGE OR INJURIES SUSTAINED SO FAR AS NOW
358  PRACTICABLE:    *Inter alia*: physical injuries to Krittika Biswas' wrists including
359  substantial pain, redness and swelling, weakness, involuntary confinement, emotional
360  injuries including difficulty sleeping and poor appetite, as attested to by Board Certified
361  Pediatrician Ishvar S. Patel, M.D.  [Exhibit 13], fear, academic deficiency, libel *per se*,
362  defamation and embarrassment.
363
364  RELIEF and AMOUNT DEMANDED:  A fair and reasonable amount that will properly
365  compensate the claimant for her pain and suffering, to wit: not less than $500,000.00 in
366  compensatory damages, and punitive damages of not less than $1,000,000.00.
367
368  DATED: May 5, 2011
369
370
371  _____
372  RAVI BATRA, ESQ.

14

373                                    <u>VERIFICATION</u>
374    STATE OF NEW YORK)
375    COUNTY OF NEW YORK) ss:
376
377          KRITTIKA BISWAS, being duly sworn, deposes and says that the deponent is a
378    Plaintiff/Claimant in the within Notice of Claim. Deponent has read the foregoing Notice
379    of Claim and knows the contents thereof; that the same, as applicable, and while a
380    synopsis, is a true sum and substance to deponent's knowledge, except as to matters
381    therein stated to be alleged upon information and belief and that as to those matters,
382    deponents believe it to be true.
383
384
385    *Krittika Biswas*
386    KRITTIKA BISWAS
387
388    Sworn to before me this 5th day
389    of May, 2011

                                                       Notary Public
390                                                     State of New York
391                                                     Todd B. Sherman
392                                                     Registration #02SH6167491
393                                                     Qualified in Bronx County
                                                       Commission Expires 8 / 4 / 20 11
394    Notary Public

                                          15

# EXHIBIT "1"



भारत का प्रधान कौंसलावास
न्यू यार्क

CONSULATE GENERAL OF INDIA
NEW YORK

## MOST URGENT

NYCG/ADM/551/1/11                                        February 9, 2011

The Consulate General of India, New York City, presents its compliments to the US Department of State, Office of Foreign Missions in New York City and has the honour to state that Miss Kritika Biswas, daughter of Mr. Debashish Biswas, Vice Consul in the Consulate General of India, is a Grade XII student in John Bowne High School (Address: ███████████ Flushing, New York 11367). She was arrested by the New York Police Department on February 8, 2011 and taken to Queens Court. Despite repeated requests by the parents of Miss Kritika Biswas and the officials of the Consulate that the person is a dependent child of a diplomat and herself a diplomatic passport holder, and has diplomatic privileges and immunities in accordance with the Vienna Convention on Consular Affairs, Miss Biswas was not released and has been held at Queens Court, New York since the afternoon of February 8, 2011.

In the above context, the Consulate General of India would like to draw the attention of the US Department of State to Article 40, 41 and 53 of Vienna Convention on Consular Relations, 1963, which reads as follows:

### Article 40 " Protection of consular officers"

The receiving State shall treat consular officers with due respect and shall take all appropriate steps to prevent any attack on their person, freedom or dignity.

### Article 41 " Personal inviolability of consular officers"

1. Consular officers shall not be liable to arrest or detention pending trial, except in the case of a grave crime and pursuant to a decision by the competent judicial authority.

2. Except in the case specified in paragraph 1 of this article, consular officers shall not be committed to prison to be liable to any other form of

3 East 64th Street • New York, N.Y. 10065 • Tel: (212) 774-0600
Fax Nos: GENERAL (212) 861-3788 • PASSPORT/VISA (212) 570-9581 • COMMERCE (212) 734-4980 • OCI (212) 734-1595
Website: www.indiacgny.org • E-mail: DCG: dcg@indiacgny.org • C(EPIC): edu@indiacgny.org • HOC: hoc@indiacgny.org
CPV: cpv@indiacgny.org • CT: ct@indiacgny.org • C(V): visa@indiacgny.org • VCA: vca@indiacgny.org • Commerce: commerce@indiacgny.org

restriction on their personal freedom save in execution of a judicial decision of final effect.

### Article 53 "Beginning and end of consular privileges and immunities"

**1.** Every member of the consular post shall enjoy the privileges and immunities provided in the present Convention from the moment he enters the territory of the receiving State on proceeding to take up his post or, if already in its territory, from the moment when he enters on his duties with the consular post.

**2.** Members of the family of a member of the consular post forming part of his household and members of his private staff shall receive the privileges and immunities provided in the present Convention from the date from which he enjoys privileges and immunities in accordance with paragraph 1 of this article or from the date of their entry into the territory of the receiving State or from the date of their becoming a member of such family or private staff, whichever is the latest.

**3.** When the functions of a member of the consular post have come to an end, his privileges and immunities and those of a member of his family forming part of his household or a member of his private staff shall normally cease at the moment when the person concerned leaves the receiving State or on the expiry of a reasonable period in which to do so, whichever is the sooner, but shall subsist until that time, even in case of armed conflict. In the case of the persons referred to in paragraph 2 of this article, their privileges and immunities shall come to an end when they cease to belong to the household or to be in the service of a member of the consular post provided, however, that if such persons intend leaving the receiving State within a reasonable period thereafter, their privileges and immunities shall subsist until the time of their departure.

**4.** However, with respect to acts performed by a consular officer or a consular employee in the exercise of his functions, immunity from jurisdiction shall continue to subsist without limitation of time.

**5.** In the event of the death of a member of the consular post, the members of his family forming part of his household shall continue to enjoy the privileges and immunities accorded to them until they leave the

receiving State or until the expiry of a reasonable period enabling them to do so, whichever is the sooner".

The Consulate further states that the arrest of Ms. Biswas is in contravention and grave violation of the Vienna Convention on Consular Relations and the Consulate should have been informed about the action taken by the NYPD authorities. As Ms. Kritika Biswas, daughter of Vice Consul Mr. Debashish Biswas, has the privileges and immunities in accordance with the Vienna Convention on Consular Relations, the Consulate General of India, New York, requests the US Department of State, Office of Foreign Missions that Miss Biswas should be released immediately and unconditionally and joined with her parents without any delay. The Consulate would appreciate an immediate action in this regard.

The Consulate General of India, New York City, avails itself of this opportunity to renew to the US Department of State, Office of Foreign Missions in New York City, the assurances of its highest consideration.

**US Department of State**
**Office of Foreign Missions**
**799, United Nations Plaza**
**8th Floor, New York-10017**
**(Attention: Mr. Murray Smith, Deputy, Director)**

**Copy to:**    Mr. Thomas Gallo, Regional Director, Office of Foreign Missions, US Department of State, 799, United Nations Plaza, 8th Floor, New York NY 10017

EXHIBIT "2"

District Attorney Queens County
125-01 Queens Boulevard
Kew Gardens, New York 11415-1568
(718) 286-6000



February 9, 2011

RICHARD A. BROWN
DISTRICT ATTORNEY

KRITTIKA BISWAS

Please be advised that a review of the records of the Queens County District Attorney's Office indicates that your arrest under arrest number ███████7399, arrest date 2/8/2011, was dismissed by this Office prior to Criminal Court arraignment

This serves as a final disposition of this arrest number

A sealing order has been or will be filed by this Office with the Division of Criminal Justice Services (DCJS) and the New York City Police Department

You should contact DCJS to confirm that this record has been sealed by contacting:

The New York State Division of Criminal Justice Services
4 Tower Place
Albany, New York 12203
Attention: Sealing Unit

Very truly yours,

HENIGMAN, LAURA

# EXHIBIT "3"



**Department of Education**
Chancellor P. Black, Chancellor

Office of School and Youth Development
Elayna Konstan, Chief Executive Officer

52 Chambers Street
Room 218
New York, NY 10007

OSYDDATA@schools.nyc.gov
+ 718 935 5004 tel

## OCCURRENCE REPORT

| DOE CONTROL NO. | NYPD CONTROL NO. |
|---|---|
| 25Q425-020811-0267 | none supplied |

| ATS CODE | SCHOOL AND/OR PROGRAM NAME/NUMBER | | INCIDENT DATE & TIME | DURING SCHOOL HOURS? |
|---|---|---|---|---|
| 25Q425 | John Bowne High School | | 2/8/2011 11:30 AM | Yes |

| REPORT | BOROUGH | SUPERINTENDENCY | GEOGRAPHICAL DISTRICT | IS THIS REPORT FOR INFORMATION ONLY |
|---|---|---|---|---|
| Original | Queens | | 25 | |

Occurrence Reported by:    Naomi Eutscy - APS

Occurrence Data Entered at:    2/8/2011 at 5:02 PM
Location of the Occurrence:    Residence
Category:    B36
Contacts:    NYPD was contacted at 11:45 AM on 2/8/2011

Superintendent was not contacted

### Description of the occurrence

Impact: A female student was arrested by PO Maldonado of the 107 pct. She sent vulgar emails to a teacher calling her a b***h, f**k you, and made comments about her daughter. Administrative action is pending.

Update:
On Monday Feb. 07, 2011 teacher, Jamie Kim-Ross reported that she had received emails vulgar from student Biswas, Krittika (████224). The emails stated the following:

1.    Dear Jamin Kim Ross(Calculus teacher):
Shit,fuck, asshole, bitch, uncle fucker, damn, merde, You damned disgusting bastard, your such a pig-fucker, nobody fucks ancle quite like you. Fuck your father's asshole. Burn in hell, fat ass bitch, burn in hell!!!!!!!!!!!!!!

2.    Subject: A favor for Ms.Kim Ross

From: A fat ghetto guy who fucked Kim Ross's daughter Kim Ross is a bitch, Kim Ross is a bitch that suck fat Jewish dick. She suck it and lick it. She suck her husband's dick with her daughter. Kim Ross's man rape her own daughter. Her daughter have sex with her father and a black ghetto son of bitch. Kim Ross's daughter get fucked as she play her violin. Kim Ross's daughter get fucked as she performed her awful violin. Kim Ross's daughter is a young hooker to be, and soon will get pregnant by her favorite teacher. Kim Ross commit adultery by fucked the teacher next door. The bitch get fucked while teaching Calculus, and suck Chinese dick,Indian dick and Korean dick. Kim Ross's daughter suck random people's dick on street, she let people fuck her vagina.Please leave me your daughter's contact information so I can fuck her next time, thank you!!

3.    Please go die, Kim Ross

*Data is most current available.*
If you have questions about this report, please contact OSYD at **OSYDData@schools.nyc.gov** or **+718 935 5004 tel**.