

**MICHAEL A. CARDOZO**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**ELIZABETH N. KRASNOW**
Assistant Corporation Counsel
phone: (212) 356-2338
fax: (212) 788-9776
email: ekrasnow@law.nyc.gov

September 4, 2013

**BY ECF**
Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>  Re:  *Biswas v. City of New York, et al.*, 12 Civ. 3607 (JGK)

Your Honor:

I write to address the issues concerning which Your Honor requested a supplemental letter from defendants during the August 9th oral argument on our motion to dismiss.

1. <u>Withdrawn Claims</u>

As an initial matter, defendants wish to memorialize that the following claims were withdrawn on the record during the oral argument: (i) the §1983 and state law malicious prosecution claim against the NYPD defendants, *see* Conf. Tr. at 35:23-36:6; (ii) the state law claim for negligent infliction of emotional distress, *id.* at 38:6-14; (iii) the state law claim against the City for negligent hiring, *id.* at 38:22-25; and (iv) the state law negligence claim against the City, the DOE, and the individually-named DOE and NYPD defendants. *Id.* at 39:9-40:24.

2. <u>Title of Defendants Larry Granshaw and Margaret Maldonado</u>

At the time of the incident alleged in the amended complaint, defendants Larry Granshaw and Margaret Maldonado were police officers, not school safety agents.[1] Neither officer was assigned to the NYPD's School Safety Division, rather, both were assigned to the School Unit within their precinct. Thus, to the extent plaintiff's *Monell* claim is premised on the activities of school safety agents or members of the School Safety Division generally, it has no causal connection to the underlying alleged violations of plaintiff's civil rights.

---

[1]  Granshaw currently holds the rank of Sergeant; Maldonado has since retired.

3.	Malicious Prosecution Claims Against The DOE Defendants

Plaintiff brings §1983 and state law malicious prosecution claims against the DOE defendants based on her suspension from school. *See* Am. Compl. (DE 26) at ¶¶534-555, 692-699 (3rd and 16th Causes of Action). At the oral argument on defendants' motion, Your Honor asked whether a school suspension proceeding is sufficiently "judicial" to serve as a vehicle for these claims. Conf. Tr. at 37:7-10. It is not.

In *Washington v. County of Rockland*, the Second Circuit rejected the argument that correction officers who were charged in an administrative proceeding, and who were "critically" never imprisoned within the traditional meaning of the 4th Amendment, could state a §1983 malicious prosecution claim. 373 F.3d 310 (2d Cir. 2004). The Court explained:

> Although the disciplinary charges included offenses for which plaintiffs could have been criminally prosecuted had they been found guilty in the administrative proceeding, plaintiffs were never the subjects of an actual criminal prosecution. Moreover, although plaintiffs were suspended without pay for thirty days pending the disposition of the disciplinary charges, no seizures or restriction of their personal liberty occurred.

*Id.* at 316. The administrative proceeding in *Washington* -- pursuant to which the correction officers were temporarily suspended from work -- is directly analogous plaintiff's temporary suspension from school. Like the correction officers in *Washington*, plaintiff has failed to state a claim. *Cf. Rolon v. Henneman*, 517 F.3d 140, 147 (2d Cir. 2008) (Finding that *Washington* "foreclosed" a malicious prosecution claim based on the initiation of disciplinary proceedings against the plaintiff police officer).[2]

4.	4th Amendment Standard In The Context Of School "Seizures"

One of the issues raised at oral argument was the correct standard to apply to plaintiff's false arrest claim against the DOE defendants, Jamie Kim-Ross and Howard Kwait. *See* Conf. Tr. at 50:1-8. In our moving papers, defendants argued that Kim-Ross and Kwait are complaining witnesses who reported plaintiff to the police and therefore are entitled to the defense of probable cause. *See* Def. Mem. (DE 31) at 8. In opposition, plaintiff did not offer any argument to refute this proposition. *See generally* Pl. Opp. (DE 34). Rather, plaintiff argued that we did not account for her initial detention in the office of non-party Assistant Principal Naomi Eutsey, which supposedly constituted a "citizen's arrest" for which probable cause is not a defense. *Id.* at 19-20. In reply, defendants argued that Eutsey is not a defendant and plaintiff did not plead a false arrest claim against her based on this detention. *See* Def. Reply (DE 37) at

---

[2]  To the extent plaintiff's counsel would argue in response that his client was arrested whereas the plaintiffs in *Washington* and *Rolon* were not, as Your Honor noted during oral argument plaintiff's detention from her arrest until her release from Central Booking is attributable to her false arrest claim and not to any claim for malicious prosecution. *See* Conf. Tr. at 35:23-36:5.

3; *see also* DE 26 at ¶¶506-514 (1st Cause of Action).[3]  Therefore, plaintiff cannot base her opposition to defendants' motion on such a claim.  *See* DE 37 at 3.

Defendants reiterate the arguments raised in our motion papers, which warrant dismissal of any false arrest claim premised on plaintiff's detention in Eutsey's office.  However, even if the Court were to find that plaintiff's detention in Eutsey's office were properly pled as part of her false arrest claim, the claim fails as explained below.

First, research has revealed no pre-existing case from the Second Circuit or Supreme Court wherein a student raised an analogous 4th Amendment claim based on a request to report to a school administrator's office.  For this reason, assuming *arguendo* that Eutsey were a defendant, she would be entitled to qualified immunity as explained in Point 5, *infra*.

Second, while case law addressing the applicability of the 4th Amendment to seizures in the school context is scarce, the Second Circuit and district courts within it have applied the relaxed standard for school search claims established by the Supreme Court in *New Jersey v. T.L.O.* to school seizure claims.  *See, e.g.*, *E.C. v. County of Suffolk*, 882 F. Supp. 2d 323, 345 (E.D.N.Y. 2012) ("[C]ourts apply the framework applicable to student searches established in *T.L.O.* to determine whether the seizure of a student is reasonable") (collecting cases), *aff'd*, 514 Fed. Appx. 28 (2d Cir. 2013).  Application of the *T.L.O.* standard here instructs that any false arrest claim premised on plaintiff's detention in Eutsey's office must be dismissed.[4]

In *T.L.O.* -- which involved the search of a student's purse by a school official who suspected her of smoking -- the Supreme Court recognized that the "special needs" of the school environment do not require strict adherence to the 4th Amendment's probable cause requirement.  *See* 469 U.S. 325, 340-341 (1985).  The Court therefore applied a reasonable suspicion standard, *id.* at 341, 345, and held that the search of a student will satisfy that standard so long as it is "justified at its inception" and "reasonable related in scope to the circumstances which justified the interference in the first place."  *Id.* at 341-342.  Accordingly, resolution of a claim based on plaintiff's detention in Eutsey's office "turns on a determination of whether the seizure of [plaintiff] was reasonable -- that is, justified at its inception and reasonable in scope."  *E.C.*, 514 Fed. Appx. at 30 (citing *T.L.O.*, 469 U.S. at 341).

With respect to the former issue -- whether the seizure was "justified at inception" -- Eutsey clearly had reasonable suspicion to detain plaintiff in connection with emails.  As laid

---

[3]   While plaintiff refers to her detention in Eutsey's office in a single paragraph in the 1st Cause of Action of the amended complaint, she does so in the context of her §1983 claim against the City and the DOE.  *See id.* at ¶509.  This allegation is therefore properly considered in the context of her *Monell* claim.  Plaintiff's corresponding state law false arrest claim makes no mention of her detention in Eutsey's office and instead refers to the actions of "defendants," a group which does not include Eutsey.  *See id.* at ¶¶676-683 (14th Cause of Action).

[4]   For purposes of liability analysis, defendants will assume *arguendo* that plaintiff was "seized" within the meaning of the 4th Amendment when she was asked to report to Eutsey's office.  As set forth in our qualified immunity argument below, it is not clearly established that the allegations in the amended complaint amount to a "seizure" so as to support such a claim.

out in defendants' moving papers, there were several links between plaintiff and the emails, namely, (i) plaintiff was a student in the classes of both teachers who received emails, (ii) she was in danger of failing both classes, (iii) the emails included words in French and plaintiff speaks French, (iv) plaintiff posted multiple negative comments on Facebook about school, generally, and about Kim-Ross, specifically, and (v) one of the posts mirrored the content of the final email which Kim-Ross received, i.e., the post and the email both referenced the fact that Kim-Ross' daughter plays the violin -- information which Kim-Ross had shared with her calculus class, which included plaintiff. *See* DE 31 at 8-9, 11. These facts generously satisfy the lenient standard of reasonable suspicion.

With respect to latter issue -- whether the seizure was "reasonable in scope" -- plaintiff does not allege that the door was closed while she was in Eutsey's office or that Eutsey or any school administrator questioned her concerning the emails. DE 26, ¶¶203-217. With the exception of plaintiff's guidance counselor informing her as to the reason she was asked to report to Eustey's office, *id.* at ¶¶214-216, plaintiff does not allege that a representative of the school was even present in the office. Nor does she allege that she indicated any objection to accompanying Eutsey to her office or to remaining there. *Id.* at ¶¶203-217. To the extent plaintiff's presence in Eutsey's office can even be deemed a "seizure," it was clearly minimal in scope. *Cf. Mislin v. City of Tonowanda Sch. Dist.*, 02 CV 273S, 2007 U.S. Dist. LEXIS 23199, at *36-37 (W.D.N.Y. Mar. 29, 2007) (In-school "seizure" was reasonable in scope where no school official physically detained the student and the questions posed to him were related to the allegations which gave rise to the request that he report to the administration office).

For these reasons, even if the Court were to find that the amended complaint includes a false arrest claim based on plaintiff's detention in Eutsey's office, it should be dismissed for failure to state a claim.

5.     Availability Of Qualified Immunity To The DOE Defendants and Eutsey

Qualified immunity protects state officials -- including school teachers and administrators -- from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted); *see also DiStiso v. Cook*, 691 F.3d 226, 248-250 (2d Cir. 2012) (Applying qualified immunity principles to §1983 claims brought by a student against a school principal and two teachers). The qualified immunity analysis consists of a two-part inquiry: (1) whether the facts taken in the light most favorable to the plaintiff show a constitutional violation, and if so, (2) whether the constitutional right at issue was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

With respect to the first inquiry, *supra*, courts consider whether the defendant's conduct was objectively reasonable, i.e., whether competent officials could disagree as to the constitutionality of the conduct. *Id.* at 397. This standard is intended to "give[ ] ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotation omitted). With respect to the second inquiry, *supra*, courts consider "whether (1) [the constitutional right at issue] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was

unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 245 (2d Cir. 2011).  In order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093-2094 (2012).

   Defendants moved for qualified immunity on behalf of Kwait and Kim-Ross for their conduct in reporting plaintiff to the police and pursuing her suspension.  Our motion was based on the fact that competent officials could disagree whether the numerous connections between plaintiff and the emails, *see* p. 3-4, *supra*, could support a reasonable belief that she was involved in their creation.  *See* DE 31 at 21-22.  These connections establish arguable probable cause for purposes of qualified immunity regardless of whether the Court considers defendants' allegedly "reckless" belief that the IP address of the emails was associated with plaintiff.  *See* Conf. Tr. at 51:12-19.  Further, as emphasized in defendants' papers and at oral argument, the fact that the emails were not sent from the computer in plaintiff's apartment does not, in any manner, confirm that she was not involved in their creation.[5]  As it cannot be said that literally <u>no other</u> reasonable teacher or administrator would have reported plaintiff to the police or pursued her suspension under the circumstances, Kwait and Kim-Ross are entitled to qualified immunity.

   Defendants did not include Eutsey in our qualified immunity analysis because the amended complaint does not make clear that the allegations pertaining to her are part of plaintiff's claims, as discussed above.  Nonetheless, Eutsey would also be entitled to qualified immunity for her conduct in requesting that plaintiff report to her office because a reasonable official operating in the legal landscape of February, 2011 would not have understood that such a request could implicate the 4th Amendment rights of a student.  *Cf. K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, ___,[6] 2013 U.S. Dist. LEXIS 15550, at *36-39 (S.D.N.Y. Feb. 5, 2013) (Awarding qualified immunity in the absence of any Supreme Court or Second Circuit precedent clearly establishing a right to 4th Amendment protection during an in-school interview of a student); *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 388 (S.D.N.Y. 2012) (same).[7]  Indeed, to find that such a request amounts to "seizure" for 4th Amendment purposes would undermine the necessary discretion of teachers and administrators to oversee the daily operation of a school.  *Cf. Mislin*, 2007 U.S. Dist. LEXIS 23199, at *33-34.  Accordingly, assuming the existence of a claim based on plaintiff's detention in Eutsey's office, such a claim would be subject to dismissal on the basis of qualified immunity.

---

[5] In a related vein, adopting plaintiff's description of the manner in which IP addresses operate, defendants would not have been able to determine the specific address from which the emails originated, but rather, only an "approximate geographical location."  *See* DE 26, ¶4(d)  Nowhere in the amended complaint does plaintiff allege that the approximate geographical location associated with IP address on the emails sent to Kim-Ross and Cohill excluded her apartment building.  *See generally id.*  Finally, while plaintiff alleges that defendants "were aware" that the emails originated from a computer supported by Earthlink -- whereas her family was a customer of Time Warner -- it is plainly impossible to make such a connection on the face of the emails.  *See* EK Decl. (DE 30), Exhs. A and C.

[6] Pin cite not yet available on LEXIS.

[7] Defendants note that, unlike in *K.D.*, *Phillips*, and *Mislin*, *supra*, there is no allegation that Eutsey even questioned plaintiff while she was in her office, *see* DE 26, ¶¶203-217, further entitling her to qualified immunity on the issue of whether a 4th Amendment violation occurred.

- 6 -

    6.    <u>Stipulated Translation</u>:

The parties respectfully submit the following translations of the two relevant "posts" on plaintiff's Facebook page. The Facebook page was reviewed by Kim-Ross prior to plaintiff's arrest and was submitted in support of defendants' motion as Exhibit E to my declaration. *See* DE 30(5).

The first excerpt to be translated is on page 3 of Exhibit E and reads "... arre nahin yaar! har din Kim ross ki chehra dekhna parta hai, woh bhi for two periods, waise bhi kuch samajhme toh ata nahin, phir tane m ..." The parties' agreed-upon translation, for purposes of defendants' motion to dismiss and for no other purpose, is as follows: "… oh no friend! Have to see Kim ross' face everyday, that too, for two periods, regardless don't understand anything anyways …"

The second excerpt to be translated is on page 4 of Exhibit E. The relevant part of the post is "… thnkn abt galis we can give to Ms.my daughter is a genius who plays the violin …" The parties' agreed-upon translation, for purposes of defendants' motion to dismiss and for no other purpose, is as follows: "… thnkn abt cuss words we can give to Ms. my daughter is a genius who plays the violin …"

Finally, to the extent plaintiff includes in her supplemental letter any authority for the proposition that she did not abandon her procedural due process claim despite failing to address it in opposition to defendants' motion, or any substantive argument concerning its viability, *see* Conf. Tr. at 16:20-17:5, defendants respectfully request the opportunity to submit a brief letter in reply.

Thank you for your consideration of this letter and of defendants' motion, generally.

                                    Respectfully submitted,

                                    *Elizabeth Krasnow*

                                    Elizabeth N. Krasnow
                                    Assistant Corporation Counsel

cc:    <u>BY ECF</u>
        Ravi Batra, Esq.
        Todd Sherman, Esq.
        *Attorneys for Plaintiff*