UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

Krittika Biswas,

                    Plaintiff,

              - v.-                                    12 Civ. 3607 (JGK)

The City of New York, ET AL.,                          OPINION AND ORDER

                    Defendants.
_____

JOHN G. KOELTL, District Judge:

    This case arises from the arrest and school suspension of
the plaintiff, a high school student named Krittika Biswas.  The
plaintiff was arrested and suspended from school for allegedly
sending threatening e-mails to two teachers at the school.  The
charge against the plaintiff was eventually dropped and another
student confessed to sending the e-mails.  The plaintiff brings
this civil rights action against the City of New York ("City")
and the New York City Department of Education ("DOE"), as well
as numerous DOE and City employees: Howard Kwait, a principal
employed by the DOE; Jamie Kim-Ross, a teacher employed by the
DOE; Elayna Konstan, Chief Executive Officer of the DOE Office
of School and Youth Development; Margaret Maldonado, a police
officer of the New York City Police Department ("NYPD"); and
Larry Granshaw, another NYPD police officer.  Also named as
defendants are ten unnamed John/Jane Doe personnel employed by
the DOE and a further ten unnamed John/Jane Doe personnel

employed by the NYPD.[1]  The plaintiff brings a host of claims
alleging that the defendants violated her rights under the
United States Constitution and seeks recovery under 42 U.S.C.
§§ 1983 and 1985, as well as Title VI of the Civil Rights Act of
1964, 42 U.S.C. §§ 2000d et seq.  She also alleges that the
defendants violated several provisions of the New York State
Constitution and committed several state law torts.  Because
several claims arise under federal laws, and the state law
claims are based on the same operative facts, jurisdiction is
proper pursuant to 28 U.S.C. §§ 1331 and 1367.

The defendants now move to dismiss the Amended Complaint in
its entirety for failure to state a claim under Rule 12(b)(6) of
the Federal Rules of Civil Procedure.  At oral argument, the
plaintiff withdrew Counts XIX thru XXIII (negligence claims
against various defendants) in their entirety.  (Transcript of
Oral Argument on August 9, 2013 ("Tr.") at 38-40)  The Court now
considers the remaining claims.


I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all

---

[1] The plaintiff sues the individual defendants in their
individual and official capacities.  Unless otherwise noted, the
discussion is limited to their individual capacities.  The
official capacity claims will be addressed in a final part of
this opinion.  Infra Part XII.

reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007); Arista Records LLC v. Lime Grp. LLC, 532 F. Supp. 2d 556,
566 (S.D.N.Y. 2007).  The Court's function on a motion to
dismiss is "not to weigh the evidence that might be presented at
a trial but merely to determine whether the complaint itself is
legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d
Cir. 1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken.  See Chambers v. Time

Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also
Bertuglia v. City of New York, 839 F. Supp. 2d 703, 713
(S.D.N.Y. 2012), appeal dismissed, 509 F. App'x 43 (2d Cir.
2013).


                                II.

     The Court accepts the plaintiff's allegations in the
Amended Complaint as true for the purposes of this motion to
dismiss.  The plaintiff, a national of India, resided in New
York City and was an honors student at the John Bowne High
School in Flushing, New York at the time the causes of action
accrued.  (Am. Compl. ¶¶ 6-7, 27.)  She brought this civil
rights action after she was detained, arrested, and suspended
from school in connection with multiple threatening e-mails that
were sent to two teachers at the high school, Kim-Ross and Ivan
Cohill.  (Am. Compl. ¶¶ 3, 4(c), 60.)  On May 12, 2012, the
plaintiff filed a Complaint in this Court, and filed an Amended
Complaint on January 11, 2013.

     Between November 2010 and February 2011, Kim-Ross, the
plaintiff's calculus teacher, and Cohill, the plaintiff's
physical education teacher, received several offensive and
threatening e-mails.  (Am. Compl. ¶¶ 4(c), 60, 80; Krasnow Decl.
Ex. A.)  On December 21, 2010, Naomi Eutsey, the assistant
principal of security at John Bowne High School, called the

                                4

plaintiff and another student into her office to talk about the
e-mails. (Am. Compl. ¶¶ 90-93.) Eutsey told the plaintiff that
school officials had conducted an investigation, and that the
Internet Protocol address ("IP address") displayed in the
headers of the offensive e-mails indicated that the e-mails had
been sent from the plaintiff's apartment building. (Am. Compl.
¶¶ 93-94.) The plaintiff alleges that this was an intentional
misrepresentation and that the defendants could not have
possessed information linking an IP address to a precise
physical location. (Am. Compl. ¶¶ 99-102.) According to the
plaintiff, such information is not publicly available and can
only be obtained through legal process, a step which the
defendants allegedly never undertook. (Am. Compl. ¶¶ 157-60.)

On February 6, 2011, Kim-Ross received another threatening
e-mail. (Am. Compl. ¶ 215.) On February 8, Eutsey escorted the
plaintiff to the office of Assistant Principal Michele Kearse,
and ordered the plaintiff not to leave until the police arrived
to question her. (Am. Compl. ¶¶ 203-17.) After the plaintiff
was allegedly confined for approximately two hours at the
school, Officer Granshaw arrived and took over; Granshaw
questioned the plaintiff and insisted that she confess to
sending the e-mails. (Am. Compl. ¶¶ 229-60.) Granshaw
threatened the plaintiff by telling her that, if she did not
confess, she would be placed in handcuffs and put in jail with

5

prostitutes and persons with infectious diseases and would not graduate from high school.  (Am. Compl. ¶¶ 260, 275.)  When the plaintiff maintained her innocence, Granshaw tightly handcuffed the plaintiff, causing pain, redness, swelling, and bruising, for which the plaintiff sought medical attention.  (Am. Compl. ¶¶ 260-63, 266, 274.)  The plaintiff complained to Granshaw that the handcuffs were too tight and caused her pain, but Granshaw replied that if the plaintiff moved, the handcuffs would only become tighter.  (Am. Compl. ¶ 273.)  At some point afterwards, Officer Maldonado arrived in Kearse's office and replaced Granshaw's handcuffs with her own.  (Am. Compl. ¶ 287.)

After arresting the plaintiff, Granshaw and Maldonado walked the plaintiff out of the school in handcuffs, placed her in a police car, and brought her to an NYPD precinct station house.[2]  (Am. Compl. ¶¶ 333-34.)  An unidentified police officer then "took hold" of the plaintiff, fingerprinted and photographed her, and placed her in a holding cell.  (Am. Compl. ¶¶ 346, 350.)  While at the precinct station house, the plaintiff was repeatedly denied access to restroom facilities. (Am. Compl. ¶ 341, 351.)  The plaintiff was then handcuffed and transported to Queens Central Booking where she was again

---

[2] There is a dispute between the parties regarding the propriety of the defendants' submission of Exhibits F and G in Krasnow's Declaration in connection with their motion.  However, it is unnecessary to rely on these documents to dispose of this motion.

fingerprinted and photographed.  (Am. Compl. ¶ 352, 354.)  The plaintiff sought to call her father, but those requests were denied until she was placed into a cell at Queens Central Booking at about 7:00 pm.[3]  (Am. Compl. ¶¶ 348, 356-59.)  After spending a night in a holding cell, at about 1:30 pm on February 9, the plaintiff was placed in handcuffs and brought to another cell where she was able to meet with an attorney.  (Am. Compl. ¶ 373.)  At about 2:00 pm on February 9, after intervention by the plaintiff's lawyer, the Queens County District Attorney decided not to bring charges against the plaintiff, and the plaintiff was released from custody.  (Am. Compl. ¶¶ 375-76.)

Although no criminal charges were brought against the plaintiff, she was suspended from school on February 10, 2011. (Am. Compl. ¶ 385.)  The plaintiff alleges that Kim-Ross, Kwait, and Konstan directed and authorized the plaintiff's suspension. (Am. Compl. ¶¶ 385, 407-08.)  Additionally, on February 16, Kim-Ross filed a written complaint with the NYPD, claiming that the plaintiff had sent offensive e-mails to her.  (Am. Compl.

---

[3] The plaintiff devotes substantial space in the Amended Complaint and her Memorandum of Law to the alleged violations of Article 36 of the Vienna Convention on Consular Relations. However, these alleged violations are not actionable and have no bearing on this case.  See Mora v. New York, 524 F.3d 183, 195 (2d Cir. 2008) ("[T]he requirement that an alien be informed of consular notification and access in Article 36(1)(b)(third) . . . does not establish a right in the alien that can be vindicated in a damages action for failure to inform the alien of the obligation.").

¶ 403.)  The plaintiff was forced to attend another school, which the plaintiff likens to a "reform school," while the disciplinary charges were pending.  (Am. Compl. ¶ 401.)  The plaintiff retained a computer expert to analyze the IP address associated with the offensive e-mails; the expert concluded with "a reasonable degree of certainty" that the e-mails did not originate from the plaintiff's computer.  (Am. Compl. ¶¶ 416-17.)  The plaintiff forwarded this information to the DOE on March 11, 2011, and the plaintiff's suspension was withdrawn and expunged on March 15, 2011.  (Am. Compl. ¶¶ 423, 425.)  On March 15, another student, S.M., confessed to sending the e-mails, but S.M. was not referred to the NYPD and was not arrested.  (Am. Compl. ¶¶ 448, 458-59.)

The plaintiff alleges that the defendants, motivated by racial animus, fabricated evidence linking her to the e-mails, namely, that the IP address shown in the header of the offending e-mails was tied to the plaintiff's apartment building.  (Am. Compl. ¶¶ 100-03, 449, 451-57.)  The plaintiff alleges that this "evidence" was clearly a fabrication, because 1) an IP address is not assigned to an entire building, 2) linking an IP address to a particular street address requires access to non-public information that the defendants never obtained, and 3) the IP address shown on the header of the offending e-mails matched that of the confessing culprit who had previously sent

8

"legitimate" e-mails to the school that also contained his computer's IP address.  (Am. Compl. ¶¶ 94-100, 126-32, 152-78.) The plaintiff thus claims that the entire investigation was a "sham," and that the defendants were unqualified to participate in the investigation they claimed to have conducted.  Moreover, the plaintiff contends that the defendants knew that she was innocent.  (Am. Compl. ¶¶ 4(g), 12(a)-(d), 85, 223, 539, 575.)

The plaintiff further asserts that the defendants' racial animus is evidenced by disparate treatment of South Asian students compared to East Asian students at John Bowne High School.  The plaintiff alleges that the East Asian student, S.M., who admitted to sending the offensive e-mails was treated more leniently in that he was suspended but not arrested.  (Am. Compl. ¶¶ 458-59, 461, 654.)  The plaintiff also alleges that the defendants refused to consider any suspects who were not South Asian and refused to consider the actual culprit as a suspect before his confession, because he, like Kim-Ross, was East Asian.  (Am. Compl. ¶¶ 120-22, 460.)  The plaintiff additionally alleges that East Asian students at John Bowne High School received more educational opportunities because they were graded less harshly than South Asian students and because they received more opportunities for in-class participation.  (Am. Compl. ¶¶ 648-49.)

## III.

To begin with, the plaintiff brings several claims relating to her arrest and detention. She alleges violations of her right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution, and brings an action pursuant to 42 U.S.C. § 1983 (Count I). She further alleges violations of Article I, Section 12 of the New York State Constitution (Count XI) and also brings claims of false arrest (Count XIV) and false imprisonment (Count XV) under New York State law. These claims are brought against all defendants except Konstan. The defendants move to dismiss these claims, arguing that there was probable cause to arrest the plaintiff.[4]

### A.

Section 1983 claims for false arrest are based on the tort of false arrest under state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (finding that a § 1983 false arrest claim is "substantially the same" as a false arrest claim under New York

---

[4] The Court will consider the claims against the individual defendants and the argument to dismiss those claims. For any § 1983 claims that survive, the Court will consider the liability of the City or the DOE under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). See infra Part X.A. The Court will then consider the liabilities of the City and the DOE for the state law claims under the theory of respondeat superior. See infra Part X.B.

State law in a case that arose in New York).  Therefore, the analysis begins with the plaintiff's false arrest/false imprisonment claims under New York State law.

In New York, false arrest and false imprisonment "are two names for the same tort." Holland v. City of Poughkeepsie, 935 N.Y.S.2d 583, 589 (App. Div. 2011).  In order to state a claim for false arrest or false imprisonment, the plaintiff must show that "(1) the defendant[s] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Id. (quoting Lee v. City of New York, 709 N.Y.S.2d 102, 102 (App. Div. 2000)) (internal quotation marks omitted); see also Pelayo v. Port Auth., 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012).  An arrest of a criminal suspect by a law enforcement officer with probable cause is a "privileged" confinement even if it is non-consensual.  Decker v. Campus, 981 F. Supp. 851, 856 (S.D.N.Y. 1997); Breitbard v. Mitchell, 390 F. Supp. 2d 237, 245 (E.D.N.Y. 2005).  Thus, for arrests by law enforcement officers, "[t]he existence of probable cause to arrest constitutes a 'complete defense' to an action for false arrest, whether that action is brought under Section 1983 or state law." Matthews v. City of New York, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (citing Amore

v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010)); see also Weyant,
101 F.3d at 852.

Arrests by private citizens may also be protected by a
privilege established by law.  For example, under New York law,
a private citizen is authorized to "arrest another person (a)
for a felony when the latter has in fact committed such felony,
and (b) for any offense when the latter has in fact committed
such offense in his presence."  N.Y. Crim. Proc. Law § 140.30.
However, "a private citizen who makes an arrest does so at his
peril; if the person arrested did not in fact commit the crime
for which he is arrested, the person who arrests him is liable
even if he acts in good faith or has probable cause to make an
arrest."  White v. Albany Med. Ctr. Hosp., 542 N.Y.S.2d 834, 835
(App. Div. 1989); see also Liranzo v. United States, 690 F.3d
78, 96 (2d Cir. 2012).


                              1.

The plaintiff brings the false arrest/false imprisonment
claims against several NYPD individuals involved in her arrest,
for which probable cause is a defense.  Mathews, 889 F. Supp. 2d
at 433.  Probable cause to arrest exists "when the arresting
officer has knowledge or reasonably trustworthy information
sufficient to warrant a person of reasonable caution in the
belief that an offense has been committed by the person to be

arrested." <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks and citation omitted).  The amount of evidence required to establish probable cause to arrest "need not reach the level of evidence necessary to support a conviction . . . but it must constitute more than rumor, suspicion, or even a strong reason to suspect." <u>United States v. Fisher</u>, 702 F.2d 372, 375 (2d Cir. 1983) (internal quotation marks and citations omitted).

The defendants first argue that the NYPD individuals were entitled to rely on the allegations of the victim to establish probable cause.  The Second Circuit Court of Appeals has explained that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." <u>Singer</u>, 63 F.3d at 119.  It is plain that "when a putative victim precisely identifies the alleged perpetrator of a crime and there is independent evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator." <u>Marin v. Viggiani</u>, No. 92 Civ. 3836, 1993 WL 404098, at *6 (S.D.N.Y. Oct. 5, 1993).  Moreover, probable cause can also be established by information from an eye witness "who

13

it seems reasonable to believe is telling the truth."
Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355
(S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993) (table
opinion); see also Bullard v. City of New York, 240 F. Supp. 2d
292, 297 (S.D.N.Y. 2003).

    None of the usual scenarios establishing probable cause
existed in this case.  Although Kim-Ross was the alleged victim
of the threatening emails, she, unlike a usual victim of a
violent crime, was not an eyewitness, and she allegedly did not
have any reasonable means or basis to "identify" the
perpetrator.  In fact, she did not submit the written statement
accusing the plaintiff of sending the e-mails until February 16,
2011, which was over a week after the plaintiff's arrest and
after the plaintiff had already been released by the police.
(Am. Compl. ¶ 403.)  There was also no eyewitness to the crime.
Thus, the police officers could not have reasonably relied on a
victim's or eyewitness's account to establish probable cause.

    When Officers Granshaw and Maldonado arrested the plaintiff
at school, the officers obviously could not have any more
information than the DOE individuals about the evidence linking
the plaintiff to the alleged wrongdoing.[5]  Therefore, whether the

---

[5] The plaintiff initially alleged that Eutsey, Kim-Ross, and
Kwait informed the NYPD defendants that they had fabricated
evidence, rather than merely proffered the fabricated evidence

NYPD officers had probable cause to arrest the plaintiff
depended on the information allegedly proffered by the DOE
individuals.[6]

The defendants no longer argue that the IP address on the
e-mails supported probable cause to arrest the plaintiff or that
they relied on the IP address as providing probable cause.[7]  (Tr.
at 3-4.)  Instead, the defendants argue that both the NYPD
defendants and the DOE defendants had probable cause to believe
that the plaintiff had sent the offensive e-mails because: 1)
the first e-mail Kim-Ross received was signed "Your dear
calculus student" and sent "[s]hortly after Kim-Ross confronted
[the] plaintiff about her academic troubles in calculus"; 2) the
plaintiff was also in Cohill's class; 3) the plaintiff was in
danger of failing both classes; 4) subsequent threatening e-
mails contained references to the fact that Kim-Ross's daughter
played the violin, a fact that Kim-Ross shared with her calculus

---

to the police.  (Am. Compl. ¶ 220.)  The plaintiff has withdrawn
that bizarre allegation.  (Tr. at 31:8-11.)

[6] Indeed, as a 1998 Memorandum of Understanding ("MOU") between
the predecessor of the DOE and the NYPD provides, "NYPD
officers, to the fullest extent possible, in instances not
requiring immediate arrest . . . , shall consult with the
principal of the school or his or her designee prior to placing
a student . . . under arrest . . . on the property of such
school."  (Am. Compl. Ex. 6, at 10.)

[7] While the defendants do not claim to have relied on the IP
address, there is at least a question whether it should have
raised questions about the reliability of the information being
provided by the DOE defendants if the IP address was
transparently unsupportive of any inference that the plaintiff
was the wrongdoer.  Cf. Singer, 63 F.3d at 119.

class; 5) the plaintiff referenced Kim-Ross and the fact that
her daughter played the violin in a post on Facebook.com days
before the final e-mail was received; and, 6) the plaintiff
speaks French and one of the offensive e-mails contained a
profane French word.  (Defs.' Mem. in Supp. of Defs.' Mot.
Dismiss ("Defs.' Mem.") at 8-9, 11, 15-16.)

    However, there is at least a factual issue as to whether
those pieces of evidence were sufficient to establish probable
cause.  Initially, it could not be decided as a matter of law
that those pieces of information were in fact conveyed to the
police and gave the police probable cause to arrest the
plaintiff, particularly in view of the allegations that the DOE
defendants initially relied on the significance of the IP
address, which they no longer claim to have relied upon.  (Am.
Compl. ¶¶ 93-94.)

    In any event, the plaintiff contends that many of these
alleged connections applied equally to other students at John
Bowne High School.  (Am. Compl. ¶¶ 110-11, 131, 140-45.)  In
particular, the defendants do not dispute that Kim-Ross herself
shared publicly with the class and many other individuals the
fact that her daughter played the violin.  (Am. Compl. ¶ 143.)
Therefore, references to this fact in the offensive e-mails and
in the Facebook.com post carry little weight in the probable
cause analysis.  Moreover, as the plaintiff has alleged, the

16

offensive French word at issue was one widely known and used by
non-French speakers, (Am. Compl. ¶ 110), and thus it is also not
an identifying piece of information.  The fact that one of the
offensive emails was signed "Your dear calculus student" also
provides very little information as to the true affiliation of
the sender, given the apparent desire of the sender to hide his
or her identity.  Finally, the plaintiff alleges that there were
multiple students enrolled in both Kim-Ross's calculus class and
Cohill's physical education class; the internet service provider
("ISP") for some of these students was Earthlink, whose network
the offensive email originated from, while the plaintiff's ISP
was Roadrunner.  (Am. Compl. ¶¶ 4(c), 4(u), 130-31.)  Therefore,
to the extent that the defendants wished to search for the
culprit among these students enrolled in both classes, the
defendants had no reason to target the plaintiff.  Thus, none of
these facts pointed specifically to the plaintiff as the
wrongdoer.

The only more particular bases for suspicion against the
plaintiff were the plaintiff's alleged academic trouble, the
resulting confrontation between the plaintiff and Kim-Ross, and
the reference to Kim-Ross in the plaintiff's Facebook.com posts.
The Facebook.com posts show, at most, that the plaintiff was
somewhat frustrated at or dissatisfied with the teacher.
Meanwhile, although instances of tension between a teacher and a

17

student over academic matters may have suggested motive for the student to send out threatening or offensive e-mails, merely one or two such instances do not "constitute . . . even a strong reason to suspect." Fisher, 702 F.2d at 375 (internal citations and quotation marks omitted).

Thus, the Court cannot, at this stage, conclude that these facts, which the defendants contend were relied upon by the NYPD individuals, were sufficient to establish probable cause. Therefore, the plaintiff has stated a claim against defendants Granshaw and Maldonado for false arrest and false imprisonment under § 1983 in violation of the Fourth and Fourteenth Amendments of the United States Constitution and under state law.

### 2.

With respect to the liability of the DOE defendants named in the false arrest claims, Kwait, Kim-Ross, and the DOE, it appears that the plaintiff seeks to hold these defendants liable for two distinct acts under two different theories. First, the plaintiff alleges that the DOE individuals conducted a citizens' arrest by confining the plaintiff in the office of Assistant Principal Kearse prior to the arrival of the police, after the DOE individuals had fabricated false evidence against her. (Am. Compl. ¶¶ 202-203, 209-210, 213, 677, 685; Pl.'s Mem. in Opp. To

Def.'s Mot. Dismiss ("Pl.'s Mem.") at 19.)   Second, the
plaintiff alleges that the DOE defendants supplied false
information to the police and caused the false arrest by the
police, (Am. Compl. ¶¶ 220, 683, 691), and are therefore liable
for instigating the false arrest by the police, (Pl.'s Mem. at
15).   The defendants deny the applicability of the first theory
and argue that the teachers and school officials did not arrest
the plaintiff but were merely civilian complainants supplying
information to the police officers who eventually made the
arrest.   The defendants then argue that the teachers and school
officials are not liable under the second theory because they
only needed to have, and had, a reasonable basis for their
suspicion in reporting the plaintiff to the police.

**a.**

With respect to the defendants' first argument, which
denies that any of the DOE individuals conducted an arrest,
there are at least issues of fact as to whether the DOE
defendants arrested the plaintiff.   The plaintiff alleges that,
on the morning of February 8, 2011, she was escorted by Eutsey,
the assistant principal of security, to Assistant Principal
Kearse's office and then waited there for thirty minutes without
being given an explanation or the freedom to leave.   (Am. Compl.
¶¶ 204, 214.)   She was subsequently told that the police were

19

coming to question her, (Am. Compl. ¶ 215), and the police finally arrived approximately two hours after the plaintiff was initially placed in the assistant principal's office, (Am. Compl. ¶¶ 203, 229).  More importantly, all of these events occurred when the DOE individuals allegedly had knowledge of the plaintiff's innocence.  (Am. Compl. ¶ 223.)  On the face of these allegations, the Court cannot conclude that this was merely a routine and normal teacher-student interaction within the DOE individuals' authority.

Therefore, as an initial matter, the plaintiff has alleged sufficient facts to show that she was confined and has pleaded the first three elements of the false arrest claim under New York State law.  Eutsey clearly intended to confine the plaintiff; the plaintiff did not feel free to leave and was thus conscious of the confinement; and the plaintiff did not consent to the confinement.  (Am. Compl. ¶¶ 209-10.)  Because probable cause is not a defense for false arrests by private citizens, White, 542 N.Y.S.2d at 835; see also Liranzo, 690 F.3d at 96, the only remaining question for this theory is whether the conduct of Eutsey was privileged; if not, the conduct constituted false arrest.  The defendants do not claim that Eutsey was a law enforcement officer with the power to arrest, but argue that the school administrators had the authority to call a student to their offices and thus could not be liable for

false arrest.  However, this was not a case of student discipline or a visit to a Dean of Discipline.  This was an alleged seizure of the plaintiff for about two hours to hold her without the freedom to leave, until the police arrived to arrest her.  The defendants have cited no authority that privileges such conduct.  Therefore, under these facts, teachers and school administrators, who are private citizens (as opposed to law enforcement officers) in this context, are liable for false arrest so long as the person arrested did not in fact commit the accused crime.  White, 542 N.Y.S.2d at 835.  The plaintiff has alleged, and the allegation is accepted for purposes of this motion, that the plaintiff did not send the threatening or offensive e-mails and that she committed no crime.  Therefore, the plaintiff has alleged sufficient facts to show that Eutsey's actions on the morning of February 8, 2011 constituted false arrest.

The defendants also argue that, because the false arrest claim is based on Eutsey's actions, and Eutsey is not a defendant in this lawsuit, the false arrest claims against the DOE defendants must be dismissed.  This argument is without merit.  As the Second Restatement of Torts explains, "[i]f the confinement is unprivileged, the one who instigates it is subject to liability to the person confined for the false imprisonment.  Instigation consists of words or acts which

21

direct, request, invite or encourage the false imprisonment
itself." Restatement (Second) of Torts § 45A (1965). Thus, if
a defendant instigates a false arrest with the intention that
the plaintiff be confined, the defendant can be held liable for
false arrest even without participating in the actual acts of
confinement. Lowmack v. Eckerd Corp., 757 N.Y.S.2d 406, 408
(App. Div. 2003). The plaintiff alleges that the fabrication of
evidence and the plan to arrest the plaintiff originated
collectively from Eutsey, Kim-Ross, and Kwait, thus showing the
involvement of the last two. (Am. Compl. ¶¶ 86, 220.)
Therefore, the plaintiff has alleged sufficient facts to hold
defendants Kim-Ross and Kwait liable for false arrest based on
Eutsey's actions.

**b.**

Under the plaintiff's second theory, Kwait and Kim-Ross are
liable for false arrest because they caused or instigated the
false arrest of the plaintiff by the police. In response, the
defendants argue that these DOE defendants were reasonable in
suspecting the plaintiff and reporting her to the police.

"A civilian complainant, by merely seeking police
assistance or furnishing information to law enforcement
authorities who are then free to exercise their own judgment as
to whether an arrest should be made and criminal charges filed,

22

will not be held liable for false arrest or malicious
prosecution." Mesiti v. Wegman, 763 N.Y.S.2d 67, 69 (App. Div.
2003) (internal quotation marks and citations omitted).  Thus,
"even if a civilian complainant is ultimately incorrect in his
belief as to whether a person is committing a crime, he need
only have had a reasonable basis for this belief in order to
have the probable cause necessary to defeat a malicious
prosecution or false arrest claim." TADCO Const. Corp. v.
Dormitory Auth. of State of New York, 700 F. Supp. 2d 253, 275
(E.D.N.Y. 2010); see also Pacicca v. Stead, 456 F. App'x 9, 12
(2d Cir. 2011).  However, a complainant can be held liable for
false arrest if the complainant "intentionally provided false
information" to instigate an arrest by law-enforcement
officials, or had no reasonable basis for the report. Brown v.
Nassau Cnty., 760 N.Y.S.2d 655, 655-56 (App. Div. 2003); see
also Weintraub v. Bd. of Educ. of City of New York, 423 F. Supp.
2d 38, 56 (E.D.N.Y. 2006) (citations omitted), reconsidered on
other grounds, 489 F. Supp. 2d 209 (E.D.N.Y. 2007), aff'd on
other grounds sub nom. Weintraub v. Bd. of Educ. of City Sch.
Dist. of City of New York, 593 F.3d 196 (2d Cir. 2010).

    In this case, it is undisputed that the DOE individuals
summoned the police and caused the arrest by the latter.  (Am.
Compl. ¶ 216.)  The plaintiff originally alleged that the DOE
individuals informed the police of the fabrication of the

evidence but later withdrew that allegation. (<u>Compare</u> Am. Compl. ¶¶ 220-28 <u>with</u> Tr. at 31.)   However, the plaintiff continues to allege that the DOE individuals provided fabricated, and thus transparently false, information to the police.[8]   (Tr. at 30:13-19, 31:12-15.)   The Amended Complaint also alleges that the DOE individuals caused the police to arrest the plaintiff while knowing that the plaintiff was actually innocent.   (Am. Compl. ¶ 202, 220-23.)   Accepting these factual allegations as true solely for purposes of this motion, there are certainly issues of fact as to whether Kwait and Kim-Ross intentionally generated and supplied false information to the police and thus can be held liable for false arrest by the police under the second theory.

## B.

The individual defendants--Maldonado, Granshaw, Kwait, and Kim-Ross--argue that they are entitled to qualified immunity with respect to all of the claims arising from their alleged false arrest of the plaintiff. <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982) (qualified immunity under federal law); <u>Arteaga</u>

---

[8] The allegation that the DOE individuals provided information to the police to support the plaintiff's arrest is reasonable in light of an official policy between the DOE and the NYPD, which requires police officers to consult with school administrators before arresting a student at school. (Am. Compl. Ex. 6, at 10:16-20); <u>see also</u> <u>supra</u> note 6.

v. New York, 527 N.E. 2d 1194, 1196 (N.Y. 1988) (qualified
immunity under New York common law).

Under federal law, "[q]ualified immunity shields government
officials from liability for civil damages when they are sued in
their personal capacity as a result of their performance of
discretionary functions, and serves to protect government
officials from the burdens of costly, insubstantial lawsuits."
Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing
Harlow, 457 U.S. at 817-18 (1982)).  Government officials
performing discretionary functions are "shielded from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which
a reasonable person would have known."  Harlow, 457 U.S. at 818;
Zavaro v. Coughlin, 970 F.2d 1148, 1153 (2d Cir. 1992); see also
Malsh v. Austin, 901 F. Supp. 757, 764 (S.D.N.Y. 1995).

The right not to be arrested without probable cause is a
clearly established right.  Cook v. Sheldon, 41 F.3d 73, 78 (2d
Cir. 1994) ("It is now far too late in our constitutional
history to deny that a person has a clearly established right
not to be arrested without probable cause.").  Nevertheless,
"even where the plaintiff's federal rights and the scope of the
official's permissible conduct are clearly established, the
qualified immunity defense protects a government actor if it was
'objectively reasonable' for him to believe that his actions

25

were lawful at the time of the challenged act." Lennon, 66 F.3d at 420 (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987) and Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).  A law enforcement officer has qualified immunity for an alleged false arrest "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Posr v. Court Officer Shield # 207, 180 F.3d 409, 416 (2d Cir. 1999) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).  See also Bullard, 240 F. Supp. 2d at 300.

New York common law provides for analogous qualified immunity.  "The New York courts recognize the defense of qualified immunity to shield the government official from liability unless that action is taken in bad faith or without a reasonable basis."  Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 364 (2d Cir. 2004) (citing Arteaga, 527 N.E.2d at 1194, and Friedman v. State, 493 N.E.2d 893 (N.Y. 1986)).

In this case, the defendants argue that the NYPD officers are entitled to qualified immunity because "reasonably competent officials could agree that the defendants' conduct was lawful at every step."  (Defs.' Mem at 21.)  However, as previously noted, the only basis for the NYPD officers to arrest the plaintiff was the allegations of the DOE defendants and such allegations were

26

insufficient to establish probable cause.  The apparent linchpin
for the DOE defendants' allegations against the plaintiff--the
allegedly tell-tale IP address--has been pulled out of the
probable cause argument because the defendants no longer claim
to have relied on it for purposes of this motion.  What is left
is a series of conclusory deductions furnished to the police by
the DOE defendants, which the plaintiff alleges did not point to
the plaintiff as the perpetrator.  Moreover, because the DOE
defendants were neither investigative experts nor eye-witnesses,
there was certainly reason to doubt the DOE defendants' account.[9]
Under these circumstances, the Court cannot determine, at this
stage and as a matter of law, that it was objectively reasonable
for the officers to find probable cause or that reasonable
officers could disagree on whether the probable cause test was
met.  See Bullard, 240 F. Supp. 2d at 301.  Therefore, the Court
cannot conclude that defendants Maldonado and Granshaw are
entitled to qualified immunity.

---

[9] The defendants cite Garrett v. City of New York, No. 10 Civ.
2689, 2011 WL 4444514 (S.D.N.Y. Sept. 26, 2011) for the
proposition that "[t]he identification of the plaintiff by the
victim made it objectively reasonable for [an officer] to
believe there was probable cause, and, therefore, [the officer]
is entitled to qualified immunity." Id. at *7.  However, as
noted above, there is plainly no precise identification by the
victim in this case, because the purported victim, Kim-Ross, did
not witness the crime, nor did she have the means or capacity to
identify the perpetrator.

With respect to defendants Kwait and Kim-Ross, the defendants argue that they are entitled to qualified immunity because they reasonably believed that the plaintiff was involved in the creation of these emails.  (Defs.' Mem 21.)  However, for the reasons already explained, there are sufficient factual allegations that the evidence allegedly supporting probable cause was insufficient.  Indeed, Kim-Ross and Kwait are alleged to have deliberately fabricated the evidence against the plaintiff, and no reasonable person could believe that it was lawful to report such knowingly false information to cause the arrest of the plaintiff.  See Brown, 760 N.Y.S. 2d at 655-56.  With respect to the DOE defendants' detention of the plaintiff, the allegations in the Amended Complaint raise factual issues as to whether the detention was based on knowingly fabricated information on which reasonable people could not have relied for such a detention.  Kwait and Kim-Ross are therefore not entitled to qualified immunity.[10]

---

[10] The defendants have not raised in their motion papers an argument that there was no clearly established right to be free from detention by school administrators preparatory to an arrest by the police without probable cause, and thus it is unnecessary to resolve that issue at this time.  In any event, while school administrators are certainly entitled to flexibility in maintaining security and order in schools, see, e.g., New Jersey v. T.L.O., 469 U.S. 325, 339-40 (1985), the prohibition against unreasonable seizures was sufficiently established so that reasonable officials could not have believed that confining a student for two hours awaiting arrest by the police based on knowingly fabricated evidence was consistent with federal or

Accordingly, the defendants' motion to dismiss Count I (false arrest under § 1983) is **denied** with respect to defendants Maldonado, Granshaw, Kwait, and Kim-Ross.  The defendants' motion to dismiss the state law claims based on false arrest and false imprisonment (Counts XIV and XV) is also **denied** with respect to defendants Maldonado, Granshaw, Kwait, and Kim-Ross.

## C.

The plaintiff also brings a claim alleging unlawful seizures and arrests in violation of the New York State Constitution (Count XI).  Although the New York Court of Appeals has recognized a cause of action for damages based on official conduct violating the State's Constitution, Brown v. State, 674 N.E.2d 1129 (N.Y. 1996), the same court has made clear that such a cause of action is a "narrow remedy" available only when "necessary to effectuate the purposes of the State constitutional protections [that the] plaintiff invokes" or "appropriate to ensure full realization of [the plaintiff's] rights."  Martinez v. City of Schenectady, 761 N.E.2d 560, 563 (N.Y. 2001).  Thus, the state constitutional tort is usually available only in cases in which a plaintiff, like the plaintiff

---

state law.  Cf. Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 598 (S.D.N.Y. 2000) (denying qualified immunity to a teacher on a Fourth Amendment claim by a student who alleged that the teacher confined her to a closet for about thirty seconds purportedly to recover a twenty-dollar bill).

in <u>Brown</u>, has no alternative remedy.  <u>Lyles v. State</u>, 770
N.Y.S.2d 81, 82 (App. Div. 2003), <u>aff'd on other grounds</u>, 820
N.E.2d 860 (N.Y. 2004); <u>Wahad v. FBI</u>, 994 F. Supp. 237, 238-40
(S.D.N.Y. 1998).  Actions for damages at common law and under
§ 1983 are both considered adequate alternative remedies that
preclude the assertion of a claim for damages under the state
Constitution.  <u>Hershey v. Goldstein</u>, --- F. Supp. 2d ---, No. 12
Civ. 3853, 2013 WL 1431422 (S.D.N.Y. Apr. 9, 2013) ("District
courts in this circuit have consistently held that there is no
private right of action under the New York State Constitution
where, as here, remedies are available under § 1983." (quoting
<u>Campbell v. City of New York</u>, No. 09 Civ. 3306, 2011 WL 6329456,
at *5 (E.D.N.Y. Dec. 15, 2011) (internal quotation marks
omitted)); <u>Wahad</u>, 994 F. Supp. at 240, 240 n.4 ("Section 1983
need not provide the exact same standard of relief in order to
provide an adequate remedy"); <u>Singh v. City of New York</u>, 418 F.
Supp. 2d 390, 405 (S.D.N.Y. 2005), <u>aff'd on other grounds</u>, 524
F.3d 361 (2d Cir. 2008); <u>Augat v. State</u>, 666 N.Y.S.2d 249, 251-
52 (App. Div. 1997) (common law torts being adequate remedies);
<u>Lyles v. State</u>, 752 N.Y.S.2d 523, 526 (Ct. Cl. 2002) ("A
fortiori, a monetary common law remedy, which is essentially
duplicative of a constitutional tort remedy, is an adequate
remedy . . . ."); <u>Remley v. State</u>, 665 N.Y.S.2d 1005, 1009 (Ct.
Cl. 1997).

In this case, the plaintiff has a remedy at common law for false arrest/false imprisonment and a § 1983 claim based on the same ground.  Therefore, the plaintiff is not without a remedy with respect to her injuries resulting from the alleged wrongful arrest and detention, and her state constitutional tort claim is redundant and precluded.  Accordingly, the defendants' motion to dismiss Count XI is **granted.**


**IV.**

The plaintiff alleges several due process violations under both the United States and the New York State Constitutions. These claims are based on the plaintiff's alleged false arrest as well as the plaintiff's suspension from school.


**A.**

The plaintiff brings her procedural due process claims under the United States and the New York State Constitutions, claiming that the defendants deprived her of liberty without due process of law by fabricating evidence.  (Am. Compl. ¶¶ 516, 671.)  However, the defendants argue that the plaintiff has abandoned these claims because she did not address the defendants' procedural due process arguments in her Memorandum of Law in Opposition to the Motion to Dismiss.  Indeed, the plaintiff's Memorandum contains arguments relating to her

substantive due process claim but does not address any issues of procedural due process.  (See Pl.'s Mem. at 24-25.)[11]  Thus, the plaintiff's procedural due process claims are abandoned, and the defendants' motion to dismiss Count II is **granted** to the extent that the claim is based on procedural due process.

**B.**

The plaintiff alleges that both the DOE individuals and the NYPD individuals violated her substantive due process rights under the Fourteenth Amendment of the United States Constitution by engaging in conscience-shocking conduct, namely, fabricating evidence and attempting to coerce a false confession.  The plaintiff also alleges violation of her due process rights under Article I, Section 6 of the New York State Constitution.  The defendants move to dismiss the plaintiff's claim on the grounds that an investigation with which the plaintiff is not satisfied does not implicate substantive due process and that school officials reporting multiple threatening e-mails to the police is not conscience-shocking conduct.

---

[11] In a subsequent letter to the Court, the plaintiff attempted to resurrect her procedural due process claims.  (Pl.'s Letter to Ct. on Aug. 23, 2013 at 1-2.)  However, the plaintiff has not been able to identify the procedural due process arguments, if any, in her Memorandum.  As the defendants correctly note, the plaintiff must be deemed to have abandoned the procedural due process claims.

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)) (internal citations omitted).  The conduct alleged must "go[] beyond merely 'offend[ing] some fastidious squeamishness or private sentimentalism.'" Smith v. Half Hollow Hills Cent. Sch., 298 F.3d 168, 173 (2d Cir. 2002) (per curiam) (alteration in original) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973) (Friendly, J.), partially abrogated on other grounds by Graham v. Connor, 490 U.S. 386 (1989)).  Rather, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).

Substantive due process is not the right to be free from any arbitrary government actions "as such"; rather, it is the right to be free from such actions that "[infringe] a protected right." O'Connor v. Pierson, 426 F.3d 187, 200 n.6 (2d Cir. 2005) (emphasis in original).  Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior,

that Amendment, not the more generalized notion of substantive

due process, must be the guide for analyzing these claims."

Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.,

plurality opinion)[12] (citing Graham, 490 U.S. at 395)); see also

Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005).

Indeed, the Supreme Court has "always been reluctant to expand

the concept of substantive due process." Collins v. City of

Harker Heights, 503 U.S. 115, 125 (1992) (citing Regents of

Univ. of Mich. v. Ewing, 474 U.S. 214, 225-226 (1985)).  In

particular, there is no separate substantive due process right

to be free from infringements that can be analyzed under the

Fourth Amendment.  Graham, 490 U.S. at 395.

In this case, the plaintiff has stated a claim of

unconstitutional arrest against the individual NYPD and DOE

defendants except Konstan.  Just like the plaintiff in Albright,

the plaintiff in this case can seek a remedy under the Fourth

Amendment through § 1983.  Accordingly, no separate cause of

action exists under the rubric of substantive due process with

respect to the deprivation of her liberty interest.[13]  Hence, the

---

[12] Although Albright was only a plurality decision, seven
justices agreed with the proposition that substantive due
process claims do not lie to remedy injuries cognizable under
other constitutional amendments.  Albright, 510 U.S. at 281
(Kennedy, J., concurring) (joined by Thomas, J.); see also id.,
510 U.S. at 287-88 (Souter, J., concurring).
[13] In support of her substantive due process claim with respect
to her liberty interest, the plaintiff cites the Second Circuit

plaintiff's claim of deprivation of liberty must be analyzed under the Fourth Amendment as a false arrest claim rather than as a substantive due process claim.  <u>Albright</u>, 510 U.S. at 272 (Rehnquist, C.J., plurality opinion), 281 (Kennedy, J., concurring), 286 (Souter, J., concurring); <u>Graham</u>, 490 U.S. at 395.  Therefore, to the extent that the plaintiff's substantive due process claim is based on the deprivation of her liberty, the defendants' motion to dismiss Counts II and IV is **granted**.  Furthermore, because the plaintiff has abandoned the procedural due process claim under the Fourteenth Amendment, the dismissal of the substantive due process claim under Count II (deprivation of liberty in violation of the Fourteenth Amendment) leaves nothing under that Count. Accordingly, the defendants' motion to dismiss Count II is **granted** in its entirety.

---

Court of Appeals's decision in <u>Zahrey v. Coffey</u>, 221 F.3d 342 (2d Cir. 2000).  In that case, the court held that "there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer action in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty."  <u>Id</u>. at 344.  However, subsequent case law suggests that this holding in <u>Zahrey</u> was probably premised upon procedural--rather than substantive--due process.  <u>Zahrey v. City of New York</u>, No. 98 Civ. 4546, 2009 WL 1024261, at *8 n.14 (S.D.N.Y. Apr. 15, 2009) (interpreting the court's decision in <u>Zahrey v. Coffey</u> as one about procedural due process).  In any event, the holdings in <u>Albright</u> and <u>Graham</u> are sufficiently clear to preclude a separate cause of action based on substantive due process in cases in which a false arrest is the basis of the action.

C.

Next, the plaintiff argues that the wrongful suspension from school was also a substantive due process violation. (Pl.'s Mem. at 25.)[14]  "To establish a violation of either procedural or substantive due process, Plaintiffs must first identify a valid liberty or property interest." Toussie v. Cnty. of Suffolk, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011); see also Goodspeed Airport v. E. Haddam Land Trust, Inc., 166 F. App'x 506, 508 (2d Cir. 2006).  It is clear that a vested right to public education is a valid property interest under the Fourteenth Amendment.  See Goss v. Lopez, 419 U.S. 565, 573, 574 (1975); DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (finding a property interest in the right to public education under New York law), aff'd, 623 F.3d 71 (2d Cir. 2010); S.C. v. Monroe Woodbury Cent. Sch.

---

[14] The plaintiff has not explicitly pleaded a theory of deprivation of property in her Amended Complaint, but argues that the wrongful suspension was a substantive due process violation in her motion papers.  (Pl.'s Mem. at 25.)  In the defendants' reply memorandum, the defendants have not objected to the introduction of this theory but argue that the DOE defendants' actions were not irrational or motivated by bad faith.  (Defs.' Rep. Mem. at 5-6.)  In addition, the case on which the defendants' initial opening memorandum relies to address the standard for substantive due process violations, DeFabio v. E. Hampton Union Free Sch. Dist., 623 F.3d 71 (2d Cir. 2010), (Defs.' Mem. at 13), discusses the standard in the context of a claim for deprivation of property in public education in violation of substantive due process.  Id. at 82. Therefore, the plaintiff's argument on the substantive due process violation in her suspension is sufficiently before the Court.

Dist., No. 11 Civ. 1672, 2012 WL 2940020 (S.D.N.Y. July 18,
2012) (same).

The Court of Appeals for the Second Circuit has held that
"a party asserting a deprivation of [property interest in
violation of] substantive due process must first establish a
valid property interest within the meaning of the
Constitution. . . . Second, the party must demonstrate that the
defendant acted in an arbitrary or irrational manner in
depriving him of that property interest." Crowley v. Courville,
76 F.3d 47, 52 (2d Cir. 1996).  In the context of decisions by
school administrators, our Court of Appeals has similarly held
that the court "will only find error implicating a student's
substantive due process rights upon a showing that an
administrator's decision to expel the student was 'arbitrary or
irrational or motivated by bad faith.'" DeFabio v. E. Hampton
Union Free Sch. Dist., 623 F.3d 71, 82 (2d Cir. 2010) (quoting
Rosa R. v. Connelly, 889 F.2d 435, 439 (2d Cir. 1989)).

In this case, the plaintiff was a student having access to
free public education under New York law, (Tr. at 39), and was
suspended for over a month, from February 10, 2011 to March 15,
2011, (Am. Compl. ¶¶ 385, 425).  Thus, the plaintiff has alleged
a deprivation of a cognizable property interest protected under
the Due Process Clause of the Fourteenth Amendment. Goss, 419
U.S. at 576 (finding a ten-day suspension to be a non-de minimis

deprivation of property right).  The only remaining question, then, is whether the actions of the individual DOE defendants in suspending the plaintiff were "arbitrary or irrational or motivated by bad faith."  DeFabio, 623 F.3d at 82.  If the plaintiff's allegations are accepted as true, the DOE defendants' collective decision to suspend the plaintiff based on fabricated evidence and with the knowledge of the plaintiff's innocence would indeed be knowingly arbitrary, irrational, or motivated by bad faith.[15]

This inference of arbitrariness, irrationality, or bad faith also defeats qualified immunity for these individuals.  As discussed above, the plaintiff clearly had a property interest in public education and a right not to be deprived of such an interest without due process.  The plaintiff's right was established with reasonable specificity by relevant case law, and a reasonable person, even one not well-versed in constitutional law, would have known that a malicious suspension based on incomplete and knowingly fabricated evidence violates

---

[15] The defendants argue that Konstan is improperly named as a defendant because there is no showing of individual involvement. The Court disagrees.  The plaintiff alleges that Konstan was personally involved in the suspension process.  (Am. Compl. ¶¶ 385, 387.)   The plaintiff further alleges that Konstan authorized the suspension with the knowledge of the plaintiff's innocence.  (Am. Compl. ¶¶ 387, 390, 407, 455.)  The plaintiff also alleges that Konstan was involved in the suppression of exculpatory evidence.  (Am. Compl. ¶ 557.)  These are more than conclusory allegations and withstand a motion to dismiss.

the student's constitutional rights in public education.  As a
result, based on the allegations, the Court cannot find that the
DOE defendants are entitled to qualified immunity.  Thus, the
plaintiff has stated a claim of substantive due process
violation against the DOE individual defendants based on her
suspension.

　　　The plaintiff also alleges that the suspension was "aided
by defendants Maldonado and Granshaw's forcible detention and
arrest" of the plaintiff.  (Am. Compl. ¶ 386.)  No additional
facts were alleged to explain the role of these two defendants
in the suspension of the plaintiff.  (Am. Compl. ¶¶ 385-400.)
Nothing in the factual allegations indicates the involvement of
the NYPD individuals in the suspension process.  Thus, the
plaintiff's assertion that the NYPD individuals were involved in
her suspension from school is nothing more than a cursory and
conclusory allegation and cannot support a cause of action
against these defendants on the substantive due process claim
with respect to her suspension.

　　　Therefore, to the extent that the plaintiff's substantive
due process claim is based on deprivation of property, the
defendants' motion to dismiss Count IV is **denied** with respect to
the individual DOE defendants, namely, Kwait, Kim-Ross, and
Konstan.  Because the plaintiff has not alleged sufficient facts
to plead a claim against the individual NYPD defendants based on

her suspension and the corresponding deprivation of property,
the motion to dismiss Count IV is **granted** with respect to the
individual NYPD defendants.


                              D.

     The plaintiff next alleges deprivation of due process in
violation of the New York State Constitution.  The meager
authorities from the New York state courts on substantive due
process under the State's Constitution suggest a protection of
property interests against irrational or unreasonable
interference from the government, see 439 E. 88 Owners Corp. v.
Tax Comm'n of City of New York, 800 N.Y.S.2d 346, 2002 WL
32799697, at *11 (Sup. Ct. 2002) (table opinion), aff'd on other
grounds, 763 N.Y.S.2d 12 (App. Div. 2003), which is similar to
the approach under federal law.  Crowley, 76 F.3d at 52.
Because the plaintiff has abandoned the procedural due process
claim and has failed to state a substantive due process claim
against the NYPD individuals under the federal Constitution, her
parallel claim under the state Constitution similarly fails.
     Moreover, as discussed above, a plaintiff cannot assert a
constitutional tort claim under the New York State Constitution
if she has an alternative remedy either at state common law or
under federal law.  Wahad, 994 F. Supp. at 240; Remley, 665
N.Y.S.2d at 1009.  Because the plaintiff has a remedy for

                              40

substantive due process violations under § 1983 and the federal
Constitution, her claim under the state Constitution is
precluded.  Accordingly, the defendants' motion to dismiss Count
XII is **granted**.


                                   **V.**

     The plaintiff next alleges malicious prosecution in
violation of the Fourth and Fourteenth Amendments, as applied
under 42 U.S.C. § 1983, and in violation of state law.  The
defendants move to dismiss these claims because the plaintiff
was not criminally prosecuted and suffered no post-arraignment
deprivation of liberty.  (Defs.' Mem at 12.)


                                   **A.**

     Count III alleges malicious prosecution in violation of the
Fourth and Fourteenth Amendments of the United States
Constitution and seeks recovery under § 1983.  To sustain a
§ 1983 claim based on malicious prosecution, a plaintiff must
demonstrate a seizure amounting to a Fourth Amendment violation
and establish the elements of a malicious prosecution claim
under state law.  See Manganiello v. City of New York, 612 F.3d
149, 160-61 (2d Cir. 2010); see also Spencer v. Ellsworth, No.
09 Civ. 3773, 2011 WL 1775963, at *4 (S.D.N.Y. May 10, 2011).
For an alleged malicious prosecution claim "to be actionable

                                   41

under section 1983 there must be a post-arraignment seizure."
Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).  A
malicious prosecution claim under the Fourth Amendment requires
a seizure "pursuant to legal process," and a warrantless arrest
would not qualify.  Singer, 63 F.3d at 116-17 (2d Cir. 1995)
(quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  Thus,
"the tort of malicious prosecution will implicate post-
arraignment deprivations of liberty," in contrast to a false
arrest claim based on a warrantless arrest, which vindicates
"deprivation[s] of liberty from the moment of arrest to the time
of arraignment."  Singer, 63 F.3d at 117.  Thus, even though
case law from the Second Circuit Court of Appeals "does not
forbid a § 1983 malicious prosecution claim premised on a civil
or administrative proceeding[,] . . . such claims must . . . be
premised on a violation of Fourth Amendment rights . . . ."
Washington v. Cnty. of Rockland, 373 F.3d 310, 317 (2d Cir.
2004).  Accordingly, no § 1983 malicious prosecution claim could
arise in circumstances in which the plaintiff is "never taken
into custody, imprisoned, physically detained or seized within
the traditional meaning of the Fourth Amendment."  Id. at 316.

    In this case, the plaintiff was arrested but the Queens
District Attorney did not pursue criminal charges against her.
(Am. Compl. ¶¶ 4(p), 385, 403; Pl.'s Mem. at 1.)  Therefore, the
plaintiff's § 1983 malicious prosecution claim cannot rest upon

her arrest as alleged in the Amended Complaint. (Am. Compl.
¶¶ 536-37.)  Additionally, the plaintiff was never arraigned,
and therefore, she could not suffer any post-arraignment seizure
as required to support a § 1983 malicious prosecution claim.
(Am. Compl. ¶¶ 4(p), 14.)

     To the extent that the plaintiff rests her claim on her
school suspension, the plaintiff has failed to demonstrate that
a Fourth Amendment liberty interest was implicated.  <u>Washington</u>,
373 F.3d at 317.  She alleges that her liberty interest was
"curtailed both by not being able to return to John Bowne High
School and being compelled to return for suspension hearing
proceedings." (Am. Compl. ¶ 547.)  However, the plaintiff has
not cited any authority to show that this is a seizure in
violation of the Fourth Amendment.

     Therefore, the plaintiff has failed to state a cause of
action under § 1983 for malicious prosecution. Accordingly, the
defendants' motion to dismiss Count III is **granted.**


                              **B.**

     The plaintiff has also brought malicious prosecution claims
under New York State law against all defendants (Count XVI), but


                               43

has subsequently withdrawn the claim against the NYPD
defendants.[16]  (Tr. at 36.)

Under New York law, "[t]o establish a cause of action for
malicious prosecution, a plaintiff must show the elements of
commencement or continuation of a judicial proceeding, malice,
want of probable cause, and the successful termination of the
precedent action in the plaintiff's favor."  G & T Terminal
Packaging Co. v. W. Growers Ass'n, 867 N.Y.S.2d 58, 59-60 (App.
Div. 2008); see also Broughton v. State, 335 N.E. 2d 310, 314
(N.Y. 1975).  Because no criminal proceedings were brought
against the plaintiff, the state law malicious prosecution claim
can only be based on the disciplinary proceedings surrounding
the plaintiff's suspension from school.

Whether the school suspension proceedings, which are
administrative in nature, can support a malicious prosecution
claim under New York law has not been decided by the State's
highest court.  See Arteaga, 527 N.E.2d at 1204 (Simons, J.,
dissenting) ("Whether an administrative hearing is a 'judicial
proceeding,' and therefore will support a cause of action for
malicious prosecution, appears to be an open question in this

---

[16] This also eliminates the same claim against the City because
the City is a separate entity from the DOE, N.Y. Educ. Law
§§ 2551, 2590-b; Eschenasy v. New York City Dept. of Educ., 604
F. Supp. 2d 639, 654 (S.D.N.Y. 2009), and none of the remaining
individual defendants, that is, the DOE individuals, were the
employees of the City.

court. . . .").   Some New York courts have held that certain
administrative actions are sufficiently "judicial" in their
nature to support a cause of action for malicious prosecution.
Compare Groat v. Town Bd. of Town of Glenville, 426 N.Y.S.2d 339
(App. Div. 1980), appeal dismissed, 50 N.Y.2d 928 (1980)
(holding that malicious prosecution may arise from town board
hearing on misconduct charges against a police officer), with
Treacy v. New York, 501 N.Y.S.2d 1005, 1006 (Ct. Cl. 1986)
(dismissing malicious prosecution action premised upon the
confinement and punishment of a prisoner pursuant to an inmate
misbehavior report and the subsequent superintendent's hearing).
As the court explained in Groat, "administrative proceedings
which require a hearing and trial of the issues on evidence and
testimony under oath, with the right of cross-examination, have
sufficient attributes of judicial proceedings to be considered
judicial proceedings for the purposes of a cause of action for
malicious prosecution."   Groat, 426 N.Y.S.2d at 341.

The parties have not developed in the record the nature of
the disciplinary proceedings against the plaintiff.   However,
the Court cannot conclude that the suspension hearing was not
sufficiently trial-like to merit the application of the
malicious prosecution tort.   The DOE Chancellor's Regulation A-
443 (hereinafter "Disciplinary Procedures") (Mar. 5, 2004)
governs student disciplinary procedures.   Disciplinary

45

Procedures §§ III.B.2(d), III.B.3.  The procedures for such a
suspension include notice, the right to present witnesses and to
cross-examine the witnesses for the school.  These procedures
also require findings by the hearing officer.  Accordingly, the
procedures are sufficiently trial-like on their face to support
a claim for malicious prosecution.

In this case, it appears that the plaintiff was indeed
subject to such a disciplinary proceeding.  (Am. Compl. ¶ 421.)
Thus, the first element of malicious prosecution, that is, the
commencement of a judicial proceeding against the plaintiff, is
satisfied.  The plaintiff was subsequently reinstated, (Am.
Compl. ¶ 425); thus, the proceeding terminated in favor of the
plaintiff.  The plaintiff's allegations that the DOE individuals
fabricated evidence against her, if taken as true, satisfy the
elements of "malice" and "want of probable cause"
simultaneously.  Therefore, the plaintiff has pleaded all four
elements of malicious prosecution under New York State law.

Moreover, at this stage of the case, the Court cannot find
that the individual DOE defendants are entitled to qualified
immunity as a matter of state law.  There are sufficient, non-
conclusory allegations that the individual DOE defendants acted
in bad faith and without a reasonable basis, on the basis of
fabricated evidence and pursued the suspensions even though the

46

District Attorney's Office declined to prosecute.  See Blouin, 356 F.3d at 364.

Accordingly, the defendants' motion to dismiss Count XVI (state law malicious prosecution) is **denied** with respect to all the individual DOE defendants.


### VI.

The plaintiff brings two claims relating to the defendants' physical contact with her during her arrest.


### A.

The plaintiff alleges excessive force by defendant Granshaw in violation of the Fourth and Fourteenth Amendments (Count V) and seeks recovery under 42 U.S.C. § 1983.  The defendants move to dismiss the plaintiff's excessive use of force claim on the basis that tight handcuffing is an insufficient basis for the claim.

Police officers' use of force is "excessive" in violation of the Fourth Amendment if it is "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham, 490 U.S. at 397).  It is well established that "[n]ot every push or shove" is excessive.  Johnson, 481 F.2d at 1033.

47

To determine whether the amount of force applied to the plaintiff was reasonable, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see also Pelayo, 893 F. Supp. 2d at 642.

Excessive force claims require "serious or harmful"--not "de minimis"--use of force. Drummond v. Castro, 522 F. Supp. 2d 667, 678-79 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). To assess a claim for excessive force based on handcuffing, the Court should consider evidence that: "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Matthews, 889 F. Supp. 2d at 441-42 (quoting Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)); see also Pelayo, 893 F. Supp. 2d at 642.

In this case, the plaintiff alleges that Granshaw "tightly placed handcuffs on both of [the plaintiff's] wrists as punishment" when the plaintiff refused to confess to having sent the e-mails. (Am. Compl. ¶ 261-63.) The plaintiff further alleges that the handcuffs caused her "substantial pain, swelling, redness, bruising, annoyance and alarm," for which she allegedly sought medical treatment attention from her personal

physician.  (Am. Compl. ¶¶ 266, 274.)  The plaintiff also claims
that she asked Granshaw to loosen the handcuffs, but, instead of
loosening the handcuffs he "replied, in substance, that [the
plaintiff] should not move as movement would make the handcuffs
tighter."  (Am. Compl. ¶ 273.)  The plaintiff alleges that
defendant Granshaw used more force than "necessary to detain and
restrain her," (Am. Compl. ¶ 277), and that the handcuffs were
applied to "cause her pain and injury" rather than to effectuate
her arrest, (Am. Compl. ¶ 278).

The defendants do not claim that the plaintiff posed an
"immediate threat to the safety of the officers or others" or
that she was "actively resisting arrest or attempting to evade
arrest by flight."  Graham, 490 U.S. at 396.  Instead, the
defendants argue that, because Maldonado replaced Granshaw's
handcuffs with Maldonado's own shortly after the initial
handcuffing, the tight handcuffs applied by Granshaw only caused
temporary pain, which is not actionable.  However, the Amended
Complaint is unclear about how long the tight handcuffs were
affixed.  The defendants have not disputed that the handcuffs
were too tight or that the plaintiff asked Granshaw to loosen
them, a request that he ignored.  Therefore, the duration of the
handcuffing does not appear to change the conclusion at this
stage.

The defendants also argue that the plaintiff's alleged injuries are contradicted by her subsequent statements that she did not seek medical treatment.  However, whether the plaintiff sought medical treatment, while probative, does not fully inform the degree of injury resulting from the tight handcuffs.  The plaintiff could suffer injury without seeking treatment.  In any event, the plaintiff has alleged sufficient facts to state a claim for the excessive use of force.  See Matthews, 889 F. Supp. 2d at 443 (citation omitted).  Hence, the plaintiff has stated a claim for excessive force against defendant Granshaw and the defendants' motion to dismiss the plaintiff's excessive force claim (Count V) is **denied** with respect to defendant Granshaw.

### B.

The plaintiff alleges battery under New York State law against defendants Maldonado and Granshaw.[17]  The defendants move to dismiss the plaintiff's battery claim because there was probable cause for the plaintiff's arrest.

A battery claim under New York State law requires proof "that there was bodily contact, that the contact was offensive,

---

[17] The Amended Complaint appears to assert battery claim against all defendants, but the plaintiff subsequently clarified, at oral argument, that the claim is only asserted against the City defendants.  (Tr. at 37:15-19.)

and that the defendant intended to make the contact without the plaintiff's consent." Bastein v. Sotto, 749 N.Y.S.2d 538, 539 (App. Div. 2002). Like a claim for excessive force under § 1983, a state law claim for battery against a police officer in the course of an arrest requires the plaintiff to prove that the officer's use of force was "excessive or objectively unreasonable under the circumstances." Pelayo, 893 F. Supp. 2d at 642 (quoting Holland, 935 N.Y.S.2d at 590). If an arrest is unlawful, an arresting police officer commits a battery when he or she touches the arrestee, including during the application of handcuffs. Budgar v. State, 414 N.Y.S.2d 463, 466 (Ct. Cl. 1979); see also Johnson v. Suffolk Cnty. Police Dep't, 665 N.Y.S.2d 440, 440-41 (App. Div. 1997).

In this case, as previously noted, no defendant appeared to have probable cause to arrest the plaintiff. Therefore, both Granshaw's and Maldonado's applications of handcuffs were in furtherance of an unlawful arrest and were thus a battery. See Johnson v. Suffolk Cnty. Police Dep't, 665 N.Y.S.2d at 440-41. Hence, the plaintiff has stated a claim for battery against defendants Granshaw and Maldonado.

Therefore, the defendants' motion to dismiss the plaintiff's battery claim is **denied** with respect to defendants Maldonado and Granshaw.

## VII.

The plaintiff brings claims alleging racial discrimination under both Title VI of the federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. (Count X) and Article I, Section 11 of the New York State Constitution (Count XIII).  The defendants move to dismiss these claims because the plaintiff has not alleged that any defendant has made any racially tinged comments, and because there was probable cause to arrest the plaintiff on the basis of other connections between the plaintiff and the offensive e-mails.

## A.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To state a claim for a violation of Title VI, "a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action." HB v. Monroe Woodbury Cent. Sch. Dist., No. 11 Civ. 5881, 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (citations and internal quotation marks omitted; Tolbert v. Queens Coll., 242

F.3d 58, 69 (2d Cir. 2001).  "Discrimination under Title VI is
not limited to being excluded from, or denied the benefits of, a
particular school program"; rather, "[d]iscriminatory actions
restrict an individual in any way in the enjoyment of any
advantage or privilege enjoyed by others receiving any service,
financial aid, or other benefit under the school system."  Zeno
v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 665-66 (2d Cir.
2012) (citations and internal quotation marks omitted).

    In this case, the plaintiff brings claims under Title VI
against both the City and the DOE (Count X).  The plaintiff has
made multiple allegations that the DOE discriminated against her
because of her race, resulting in diminished educational
opportunities.  The plaintiff alleges that the DOE individuals
treated the plaintiff, who is South Asian, more harshly than the
actual culprit, a male student identified by the acronym S.M.,
who is East Asian.  After S.M. confessed to sending the e-mails,
the DOE individuals did not summon the police to arrest S.M. but
only suspended him.  (Am. Compl. ¶¶ 4(v), 450-61.)  The
plaintiff further alleges that the defendants Kim-Ross and Kwait
intervened to ensure that S.M. did not face criminal charges and
that S.M. was not arrested.  (Am. Compl. ¶¶ 4(v), 461.)  In
addition, the plaintiff alleges that Kim-Ross and S.M. are both
persons of East Asian descent.  (Am. Compl. ¶ 460.)  The
plaintiff also alleges that South Asian Indian students were

consistently treated less favorably at John Bowne High School
compared to East Asian students.  (Am. Compl. ¶¶ 645-47.)  The
plaintiff alleges that East Asian students were given more
opportunities for classroom participation, were graded more
leniently, and were given more educational opportunities
generally.  (Am. Compl. ¶¶ 649.)  The Amended Complaint has
alleged sufficient facts to support a plausible claim that the
DOE intentionally discriminated against the plaintiff and that
her racial identity as a South Asian person was a substantial or
motivating factor in the actions of the individual DOE
defendants.

Meanwhile, it is undisputed that the City and the DOE are
two separate municipal entities.  N.Y. Educ. Law §§ 2551, 2590-
b; Eschenasy v. New York City Dept. of Educ., 604 F. Supp. 2d
639, 654 (S.D.N.Y. 2009).  Therefore, the City can only be held
liable based on the actions of its employees.  The plaintiff
alleges that she was denied the educational opportunities
afforded to other students at John Bowne High School because of
her race, and none of the alleged discriminatory conduct or
racial animus applied to the NYPD officers.  The plaintiff has
not alleged that any of the individual NYPD defendants were
involved in the disciplinary proceeding that caused the
plaintiff to be "excluded from participation in, be denied the
benefits of, or be subjected to discrimination" in the education

program. 42 U.S.C. § 2000d.  Therefore, the defendants' motion
to dismiss the plaintiff's Title VI claim (Count X) is **denied**
with respect to the DOE, but is **granted** with respect to the
City.


**B.**

The plaintiff also alleges that the defendants deprived her
of equal protection of laws in violation of Article I, Section
11 of the New York State Constitution (Count XIII).  The
defendants argue that this claim should be dismissed because the
plaintiff has not sufficiently alleged differential treatment
between the plaintiff and any similarly situated student.
(Defs.' Mem at 22-23.)

The Equal Protection Clause of the New York State
Constitution provides that "[n]o person shall be denied the
equal protection of the laws of this state or any subdivision
thereof."  N.Y. Const., art. I, § 11.  Like its federal
counterpart, this clause "commands that 'persons similarly
situated should be treated alike.'"  Walton v. New York State
Dep't of Corr., 921 N.E.2d 145, 156 (N.Y. 2009) (quoting
Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439
(1985)).  However, as discussed above, a plaintiff cannot assert
a state-law constitutional tort claim if she has an alternative
remedy under either federal or state law.  Wahad, 994 F. Supp.

at 240; Remley, 665 N.Y.S.2d at 1009.  Because the plaintiff has a remedy for Title VI violations by the DOE, her claim under the New York State Constitution is precluded.  Meanwhile, as noted above, the plaintiff has failed to make sufficient factual allegations showing discriminatory conduct on the part of the NYPD individuals even if she had a cause of action under the state Constitution.  Accordingly, the defendants' motion to dismiss Count XIII is **granted**.

## VIII.

The plaintiff brings two claims relating to the defendants' alleged conspiracy to arrest and detain her without probable cause and to suspend her despite their knowledge of her innocence.  The plaintiff asserts a civil conspiracy claim under 42 U.S.C. § 1983 based on the allegation that the defendants conspired to deprive her of her constitutional rights (Count VI).  The plaintiff also asserts a race-based conspiracy claim under 42 U.S.C. § 1985(3), alleging that the defendants deprived her of equal protection of law and privileges and immunities because of the defendants' racial animus towards persons of South Asian descent (Count IX).

In order state a § 1983 conspiracy claim, the plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt
act done in furtherance of that goal causing damages." Bullard,
240 F. Supp. 2d at 301 (quoting Pangburn v. Culbertson, 200 F.3d
65, 72 (2d Cir. 1999)) (internal quotation marks omitted).  A
§ 1983 conspiracy claim must be based on an underlying violation
of one or more constitutional rights.  Bertuglia, 839 F. Supp.
2d at 727-28.  Similarly, the elements of a § 1985(3) claim are:
"(1) a conspiracy; (2) for the purpose of depriving, either
directly or indirectly, any person or class of persons of equal
protection of the laws, . . .; (3) an act in furtherance of the
conspiracy; (4) whereby a person is . . . deprived of any right
of a citizen of the United States." Brown v. City of Oneonta,
221 F.3d 329, 341 (2d Cir. 2000) (quoting Mian v. Donaldson,
Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1097 (2d Cir. 1993)).
In addition, for a § 1985(3) claim, the "conspiracy must also be
motivated by some racial or perhaps otherwise class-based,
invidious discriminatory animus behind the conspirators'
actions." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999);
see also Melnitzky v. HSBC Bank USA, No. 06 Civ. 13526, 2007 WL
1159639, at *9 (S.D.N.Y. Apr. 18, 2007).

    While conspiracies are "by their very nature secretive
operations, and may have to be proven by circumstantial, rather
than direct, evidence," Pangburn, 200 F.3d at 72 (citations and
internal quotation marks omitted), mere conclusory allegations

are insufficient to state a claim for conspiracy.  <u>Ciambriello</u>
<u>v. Cnty. of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002); <u>see also</u>
<u>Boddie v. Schnieder</u>, 105 F.3d 857, 862 (2d Cir. 1997)
("conclusory, vague, or general allegations of conspiracy"
insufficient to state a claim for conspiracy under § 1983
(citation omitted)).  For claims of § 1983 or § 1985(3)
conspiracies to survive a motion to dismiss, the plaintiff "must
provide some factual basis supporting a meeting of the minds
. . . ."  <u>K.D. ex rel. Duncan v. White Plains Sch. Dist.</u>, 921 F.
Supp. 2d 197, 208 (S.D.N.Y. 2013) (citations and internal
quotation marks omitted).

     In this case, the plaintiff has sufficiently pleaded three
counts of federal constitutional violations based on the conduct
of some of the defendants: the claim against both the individual
DOE defendants (excluding defendant Konstan) and the individual
NYPD defendants for false arrest in violation of the Fourth and
Fourteenth Amendments (Count I), the claim against the
individual DOE defendants for violation of substantive due
process rights under the Fourteenth Amendment (Count IV), and
the claim against defendant Granshaw for excessive force in
violation of the Fourth and Fourteenth Amendments (Count V).

     While the plaintiff has alleged a wide-ranging conspiracy
to deprive the plaintiff of the constitutional rights asserted
in the specific counts, she has concentrated on the facts

surrounding her arrest,[18] and those factual allegations are
sufficient to withstand the motion to dismiss.[19]   The plaintiff
alleges that, on the morning of February 8, 2011, Eutsey, Kwait,
Kim-Ross, Granshaw, and Maldonado communicated with each other
and "devis[ed] a plan to arrest, detain, restrain, prosecute and
suspend [the plaintiff], all knowing that there was no evidence
linking [the plaintiff] to any criminal conduct."  (Am. Compl.
¶ 220.)   The plaintiff further alleges that defendants Granshaw

_____

[18] In her motion papers, the plaintiff has not explicitly argued
that the defendants conspired to suspend her from school, but
only argues in very general terms that there was a conspiracy to
deprive the plaintiff of her constitutional rights, and that the
conspiracy resulted in, among other things, the plaintiff being
"civilly prosecuted" after arrest.  (Pl.'s Mem. at 26.)   This
falls short of arguing specifically that the defendants
conspired to deprive her of a property right.   In any event,
other than a series of conclusory allegations that the NYPD
officers "agreed" with the DOE individuals to take certain
actions, (Am. Compl. ¶¶ 220-27), the Amended Complaint contains
no allegations substantiating the claim that the police officers
actually had a meeting of the minds with the DOE individuals
specifically to suspend the plaintiff.   For example, there are
no allegations showing that the NYPD defendants had any role in
the suspension other than the allegation that the arrest was a
factor in the suspension.  (Am. Compl. ¶¶ 385-86.)   Meanwhile,
the allegedly concerted actions among the DOE individuals in
fabricating the evidence and suspending the plaintiff cannot
support a § 1983 conspiracy claim because employees of the same
municipal entity are legally incapable of conspiring with each
other under the "intra-corporate conspiracy" doctrine.   See
Anemone v. Metro. Transp. Auth., 419 F. Supp. 2d 602, 603-04
(S.D.N.Y. 2006); Trombley v. O'Neill, --- F. Supp. 2d. ---, No.
11 Civ. 0569, 2013 WL 869514, at *10 (N.D.N.Y. Mar. 7, 2013).
[19] The defendants have not sought to distinguish among the
individual defendants for purposes of the motion to dismiss the
conspiracy claim, but the plaintiff has not attempted to
implicate defendant Konstan in the false arrest claim, which is
the focus of the § 1983 conspiracy claim.

and Maldonado agreed with the Eutsey, Kwait, and Kim-Ross about
the plan of action.  (Am. Compl. ¶ 224.)  The plaintiff argues
that, because the evidence proffered by the DOE individuals was
inadequate and the IP address "evidence" was transparently
false, the police knew that there was no evidence against the
plaintiff.  The plaintiff has also produced a 1998 Memorandum of
Understanding ("MOU") between the predecessor to the DOE and the
City, which contains a policy requiring that NYPD police
officers consult with school administrators before arresting a
student at school.  (Am. Compl. Ex. 6, at 10.)

The plaintiff has alleged sufficient facts plausibly
showing that the NYPD defendants communicated and agreed with
the school individuals regarding the subsequent arrest, which
was allegedly without probable cause and thus violated the
plaintiff's constitutional rights.  Therefore, the plaintiff has
stated a claim of § 1983 conspiracy against the individual
defendants.

With respect to the § 1985(3) race-based conspiracy, the
plaintiff has failed to allege facts showing that any of the
NYPD defendants acted with racial animus.  None of the
plaintiff's allegations of racial animus apply to the NYPD
defendants, and the Title VI claim is dismissed with respect to
the City.  Therefore, any alleged race-based conspiracy could
exist only among the DOE individuals, who were employees of the

same municipal entity that is different and separate from the
City.  N.Y. Educ. Law §§ 2551, 2590-b; Eschenasy, 604 F. Supp.
2d at 653.

Under the "intra-corporate conspiracy" doctrine, the
officers, employees, and agents of the same corporate entity
acting within their scope of employment, along with the
corporate entity itself, are considered a single entity and are
legally incapable of conspiring with each other.  See Little v.
City of New York, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007);
Everson v. New York City Transit Auth., 216 F. Supp. 2d 71, 76
(E.D.N.Y. 2002); Quinn v. Nassau County Police Dept., 53 F.
Supp. 2d 347, 359 (E.D.N.Y. 1999).  An exception to the doctrine
exists in circumstances in which individual employees pursue
independent personal interests that are "wholly separate and
apart from the entity."  Nassau Cnty. Employee "L" v. Cnty. of
Nassau, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004) (quoting
Bond v. Bd. of Educ. of the City of New York, No. 97 Civ. 1337,
1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999)) (internal
quotation marks omitted).  The Court of Appeals for the Second
Circuit has confirmed the doctrine's applicability to § 1985(3)
claims.  Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978);
Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 70-71 (2d
Cir. 1976); see also Anemone v. Metro. Transp. Auth., 419 F.
Supp. 2d 602, 603-04 (S.D.N.Y. 2006).  In this case, the

plaintiff does not dispute that the DOE individuals were acting within their scope of employment; nor does she argue that these individuals were pursuing personal interests that are separate and apart from the interests of the entity.  Therefore, the plaintiff's § 1985(3) conspiracy claim is barred as a matter of law.

Accordingly, the defendants' motion to dismiss Count VI (§ 1983 conspiracy) is **denied**.  The defendants' motion to dismiss Count IX (§ 1985(3) conspiracy) is **granted.**


**IX.**

The plaintiff initially brought claims alleging intentional infliction of emotional distress ("IIED") (Count XVIII) and negligent infliction of emotional distress ("NIED") (Count XXIII) against all defendants. The plaintiff subsequently withdrew the NIED claim in its entirety, and also withdrew the IIED claim with respect to the individual NYPD defendants and the City, leaving only the IIED claim against the individual DOE defendants and the DOE.  (Tr. at 38.)  The defendants move to dismiss this claim because IIED claims are disfavored in New York, and because the defendants "simply performed their jobs" and "exercised objectively reasonable judgment."  (Defs.' Mem at 24.)

In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) the intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. N.Y. Post Co., 612 N.Ed.2d 699, 702 (N.Y. 1993)); see also Mussafi v. Fishman, No. 12 Civ. 2071, 2012 WL 5473874, at *9 (S.D.N.Y. Nov. 12, 2012).  Moreover, "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress."  Jean-Laurent v. Hennessy, No. 05 Civ. 1155, 2008 WL 3049875, at *20 (E.D.N.Y. Aug. 1, 2008) (citation omitted).  IIED claims are generally disfavored under the State's law.  See, e.g., Travis v. Vill. of Dobbs Ferry, 355 F. Supp. 2d 740, 756 (S.D.N.Y. 2005). Typically, in order to sustain an IIED claim, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978) (citation omitted).

In this case, the plaintiff alleges that she suffered emotional injury in that she was traumatized because of her arrest and suspension.  (Am. Compl. ¶¶ 32, 410-11, 442-43, 462-

63.)  The defendants do not contest that the plaintiff has
suffered a cognizable emotional injury.  Instead, the defendants
dispute the sufficiency of the conduct, claiming that the
conduct is not "extreme and outrageous" enough to support her
claim.  The plaintiff alleges that the DOE defendants, knowing
that the plaintiff was innocent, fabricated evidence to be used
against the plaintiff in an attempt to secure a criminal
prosecution and school suspension, (Am. Compl. ¶¶ 12(a)-(d),
201), resulting in the plaintiff's spending a night in jail and
being suspended from school, (Am. Compl. ¶¶ 5).  The plaintiff
further alleges that the DOE defendants attempted to coerce a
false confession through various threats.  (Am. Compl. ¶¶ 251-
263, 278-79).  A reasonable jury may find that it is
"outrageous," "atrocious," and "utterly intolerable in a
civilized community" for educators--entrusted with the care and
mentorship of a young student--to act in the ways alleged in the
Amended Complaint.  See Sylvester v. City of New York, 385 F.
Supp. 2d 431 (S.D.N.Y. 2005) (denying summary judgment on an
IIED claim to police officers who, among other things, allegedly
pressured individuals to give false statements).  Therefore, the
defendants' motion to dismiss the plaintiff's IIED claim (Count
XVIII) is **denied** with respect to the DOE individual defendants.

**X.**

**A.**

The Court now considers the liability of the DOE and the
City for the § 1983 claims.  The DOE and the City are separate
municipal entities.  N.Y. Educ. Law §§ 2551, 2590-b; Eschenasy,
604 F. Supp. 2d at 653.  "[M]unicipalities may be sued directly
under § 1983 for constitutional deprivations inflicted upon
private individuals pursuant to a governmental custom, policy,
ordinance, regulation, or decision."  Batista v. Rodriguez, 702
F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc.
Servs., 436 U.S. 658, 690-91 (1978)).  Thus, for § 1983 claims,
municipalities are not subject to liability under a theory of
respondeat superior, but rather on the basis that their policies
or customs inflicted the alleged injuries under the Monell
doctrine.  Id.  "[T]o hold a city liable under § 1983 for the
unconstitutional actions of its employees, a plaintiff is
required to plead and prove three elements: (1) an official
policy or custom that (2) causes the plaintiff to be subjected
to (3) a denial of a constitutional right."  Id.; see also Adam
v. Metro. Transp. Auth., No. 07 Civ. 8807, 2011 WL 891441, at *3
(S.D.N.Y. Mar. 15, 2011); Bertuglia, 839 F. Supp. 2d at 737.
The plaintiff may show the existence of such a custom in a
number of ways, namely, by identifying 1) an express policy or
custom, 2) an authorization of a policymaker of the

unconstitutional practice, 3) failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or 4) a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policy-making officials." Pangburn, 200 F.3d at 71-72 (citations and internal quotation marks omitted).

In particular, to plead a Monell claim based on a failure to train, a plaintiff must plead (1) that "a policymaker [of the municipality] knows 'to a moral certainty' that her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992). As the United States Supreme Court explained in Connick v. Thompson, 131 S. Ct. 1350 (2011), a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a failure to train." Id. at 1360. See also Bertuglia, 839 F. Supp. 2d at 738.

In this case, the only remaining § 1983 claims are those under Counts I, IV, V, and VI.  Count I concerns the wrongful arrest of the plaintiff and is sustained against the individual NYPD and DOE defendants except Konstan.  Count IV concerns the substantive due process deprivation in the suspension of the plaintiff from school and is asserted only against the DOE defendants.  Count V concerns the excessive force employed by defendant Granshaw in arresting the plaintiff.  Count VI concerns the § 1983 conspiracy between the DOE individuals and the police.

The Court first considers the Monell liability of the City and the DOE for the alleged false arrest and the conspiracy surrounding the arrest.  The plaintiff has only made general allegations such as that the defendant entities "maintained a policy, custom, or pattern and practice" that has authorized unconstitutional arrests and that causes continuing injuries to other students, or that the defendant entities failed to train and supervise.  (E.g. Am. Compl. ¶¶ 464-69, 480-86.)  These conclusory allegations are insufficient to overcome a motion to dismiss.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555.

The only specific policy that the plaintiff has identified is the 1998 MOU between the Board of Education (the predecessor to the DOE) and the City, under which the Board transferred the school security function to the NYPD. (Am Compl. ¶ 470; see generally Am. Compl. Ex. 6.) The MOU and subsequent explanatory exhibits contain details of the unified school security enforcement structure and the functions of the school security agents. (See generally Am. Compl. Exs. 6, 7, 8.) The plaintiff argues that the MOU authorizes arrests at school without probable cause and therefore caused the plaintiff's injuries. However, there is plainly no suggestion in the MOU of any official City or DOE policy that allowed arrest without probable cause. To the extent that the MOU concerns police officers summoned to the school specifically to conduct criminal arrests, the MOU only provides that school staff members and safety personnel are not precluded from reporting suspected criminal acts directly to the NYPD. (Am. Compl. Ex. 6 at 11.)

In particular, the plaintiff points to two provisions in the MOU. (Pl.'s Letter to Ct. on Aug. 23, 2013 at 5-6.) The first one allows NYPD personnel to enforce DOE rules, (Am. Compl. Ex. 6 at 10), while the second one requires that NYPD personnel consult with school administrators before arresting any students on school property, (Am. Compl. Ex. 6 at 10). Neither provides even the slightest hint that there was an

official policy authorizing or promoting false arrests and causing the plaintiff's injury.  The plaintiff further alleges that the NYPD controlled the hiring and training of school safety personnel and maintained extensive cooperation with the DOE on school safety programs and policies.  However, in the end, the plaintiff cannot plausibly argue that, simply because a policy gives the NYPD power over school safety, any false arrest occurring at school was caused by that policy.

The plaintiff also points to a statement in which NYPD Commissioner Raymond Kelly, in a letter to Robert Jackson, New York City Council's Education Committee Chair, conceded that the NYPD had received more than two thousand complaints against the NYPD school safety personnel over a five year period, 27% of which were substantiated.[20]  (Am. Compl. Ex. 7; Pl.'s Mem. at 29.)  Commissioner Kelly's statements are not relevant to the present case because they primarily address the creation and functioning of school safety personnel.  (See generally Am. Compl. Ex. 7.)  Neither defendant Granshaw nor defendant

---

[20] In making this statement, Commissioner Kelly was trying to show that the complaints were relatively few given the sheer size of the student body at public schools in New York City. (Am. Compl. Ex. 7.)  According to the Commissioner, there were 722 substantiated complaints against school safety agents over a five year period, an average of 142 per year, compared with a total of over 5,000 school officers in a school system that served over one million students city-wide.  However, the statement is irrelevant in any event because it was directed at school safety agents, not NYPD police officers.

Maldonado was a school safety agent or was acting as one when they arrested the plaintiff; nor does the plaintiff contend that she was being unruly, was violating school rules, and was removed from school pursuant to the protocol described in the MOU.  Therefore, the MOU and the subsequent statements by Commissioner Kelly are irrelevant to the plaintiff's alleged injuries.

The plaintiff has also failed to allege sufficient facts to show, in other ways, the existence of a policy promoting or even authorizing arrest without probable cause.  The plaintiff has failed to identify the specific actions of any policymaker in the DOE, the City, or NYPD causing the plaintiff's arrest;[21] nor has the plaintiff specifically identified any pattern or even multiple other instances of similar misconduct, namely, false arrests of students based on evidence fabricated by school administrators and teachers,[22] in order to demonstrate constructive acquiescence or failure to train.  Walker, 974 F.2d

---

[21] The only DOE policymaker named as a defendant in this case is Elena Konstan.  However, the plaintiff has not specifically alleged any action by Konstan that caused the plaintiff's arrest. In fact, Konstan was singly excepted from the false arrest claims, which are brought against all other defendants.
[22] As noted above, besides conclusory allegations regarding the existence of a pattern, (e.g. Am. Compl. ¶ 474), any pattern of wrongdoing that the plaintiff has specifically identified related to school safety personnel, but such personnel were not involved in the plaintiff's arrest.  The plaintiff alleges a false arrest caused by DOE employees and NYPD police officers. (Am. Compl. ¶¶ 475-76.)

at 297-98; Connick, 131 S. Ct. at 1360; Abreu v. City of New York, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009) (allegation of a single instance of violation insufficient to show existence of policy or failure to train). Accordingly, the City and the DOE cannot be held liable for the § 1983 false arrest claim (Count I) under Monell or the § 1983 conspiracy claim (Count VI), which suffers from the same defects.

With respect to the substantive due process claim against the DOE based on the wrongful suspension, the plaintiff alleges that defendant Konstan, as a policymaker, promulgated and implemented a defective disciplinary protocol that allowed a student to be suspended without any reliable evidence for sending out offensive e-mails. (Am. Compl. ¶¶ 432-37.) The plaintiff further alleges that the DOE defendants "pursued the suspension based upon what was knowingly false evidence" and "needlessly and maliciously prolonged the suspension period by delaying [the] formal hearing." (Am. Compl. ¶ 420.) Moreover, it is not disputed that, for whatever reason, the plaintiff was suspended for over a month, even though the DOE had never had any reliable evidence and the suspension was eventually withdrawn in the face of evidence allegedly showing the plaintiff's innocence. These allegations, taken together, establish a facially plausible case based on the alleged flaws in the DOE's disciplinary proceedings and the action of

71

defendant Konstan as a policymaker.  Therefore, the plaintiff has stated sufficient factual allegations that DOE can be held liable for the § 1983 substantive due process claim (Count IV) under Monell.  Meanwhile, because the City is a distinct and separate entity, the City cannot be held liable for this claim.

Finally, with respect to the excessive force claim against defendant Granshaw, the plaintiff has only alleged that Granshaw acted "in a manner consistent with the policy, practice and custom of NYC, the NYPD and the NYCDOE," (Am. Compl. ¶ 565), and that the City and the NYPD failed "to properly train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of [the plaintiff]."  (Am. Compl. ¶ 566.) Beyond these conclusory allegations and the MOU that provides no support to the allegations, the plaintiff has failed to allege any fact to suggest the existence of a policy causing the police to use excessive force against the plaintiff.  The plaintiff has also not identified any widespread patterns or similar instances of conduct suggesting a failure to train.  Connick, 131 S. Ct. at 1360.  Nor has she identified any aspects of the training or supervision at the NYPD that are allegedly deficient or inadequate.  Marte v. New York City Police Dep't, No. 10 Civ. 3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010).  Thus, the plaintiff's conclusory, boilerplate allegations are insufficient to state a claim based on the existence of an

official policy.  See Triano v. Town of Harrison, 895 F. Supp. 2d 526, 540-41 (S.D.N.Y. 2012) (dismissing a similar claim of failure to train).  Therefore, neither the City nor the DOE can be held liable for the § 1983 excessive force claim (Count V) under Monell.

Accordingly, the defendants' motion to dismiss Counts I, V, and VI is **granted** with respect to the DOE and the City.  The defendants' motion to dismiss Count IV is **denied** with respect to the DOE but is **granted** with respect to the City.

### B.

While the DOE and the City's liability under § 1983 is based on the Monell claims, their liability for state law torts is imposed under the theory of respondeat superior.  "Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior."  L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002); see also Norton v. Town of Islip, No. 04 Civ. 3079, 2013 WL 84896, at *6 (E.D.N.Y. Jan. 7, 2013); Fera v. City of Albany, 568 F. Supp. 2d 248, 261-62 (N.D.N.Y. 2008). Moreover, "[n]o municipal custom or policy need be proven to establish the liability of [a municipality] for violation of that state law, for '[m]unicipalities surrendered their common-

law tort immunity for the misfeasance of their officers and employees long ago.'" Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012) (citing and quoting Tango v. Tulevech, 459 N.E. 2d 182, 185 (N.Y. 1983)) (last alteration in original); see also Norton, 2013 WL 84896, at *6.

In this case, the plaintiff has stated causes of action for false arrest and false imprisonment (Counts XIV and XV) against the individual NYPD and DOE defendants except Konstan. Therefore, the City and the DOE can be held liable for these two counts, and the defendants' motion to dismiss Counts XIV and XV is **denied** with respect to the City and the DOE.  A malicious prosecution claim (Count XVI) and an IIED claim (Count XVIII) remain against the individual DOE defendants, and hence against the DOE.  Therefore, the defendants' motion to dismiss Counts XVI and XVIII is **denied** with respect to the DOE.  Finally, the battery claim (Count XVII) remains against defendants Granshaw and Maldonado, and hence against the City.  Therefore, the defendants' motion to dismiss Count XVII is **denied** with respect to the City.

**XI.**

The plaintiff dedicates two separate counts in her Amended Complaint to respondeat superior (Counts XXIV and XXV).  Under New York law, respondeat superior "does not stand alone as a

74

substantive cause of action."  Donelli v. Cnty. of Sullivan, No. 07 Civ. 2157, 2009 WL 2365551, at *12 n.10 (S.D.N.Y. July 31, 2009) (citation omitted).  Therefore, the defendants' motion to dismiss the plaintiff's respondeat superior claims (Counts XXIV and XXV) is **granted**.

The plaintiff also brings two counts of § 1983 claims (Counts VII and VIII) against the City and the DOE.  Similarly, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  The plaintiff has not identified any additional causes of action under the Constitution or laws of the United States, but merely "repeats, reiterates, and re-alleges each and every allegation stated in the preceding paragraphs as if set forth in full herein." (Am. Compl. ¶¶ 583, 585.)  Therefore, the stand-alone § 1983 claims against the City and the DOE are redundant, and the defendants' motion to dismiss Counts VII and VIII is **granted**.

## XII.

The plaintiff sues the individual defendants in their individual and official capacities, and the Court now considers the claims against the individual defendants in their official

capacities.  For § 1983 claims, a suit against a governmental
officer in the officer's official capacity is equivalent to a
suit against that entity of which the officer is an agent.  <u>See</u>
<u>McMillan v. Monroe County</u>, 520 U.S. 781, 785 n. 2 (1997);
<u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985); <u>DeCarlo v. Fry</u>,
141 F.3d 56, 61 (2d Cir. 1998); <u>see also</u> <u>Grosso v. Town of</u>
<u>Clarkstown</u>, No. 94 Civ. 7722, 1998 WL 566814, at *11 n.4
(S.D.N.Y. Sept. 3, 1998).  Moreover, liability of municipalities
can arise only under the <u>Monell</u> doctrine.  <u>Batista</u>, 702 F.2d at
397 (2d Cir. 1983).  Therefore, the plaintiff's remaining § 1983
claims (Counts I, IV, V, and VI) against the individual
defendants in their official capacities are **dismissed** either for
failing to state a claim under <u>Monell</u>, as the Court has already
decided in the context of the <u>Monell</u> liability of the City and
the DOE, or for being duplicative.  <u>See</u> <u>Lipton v. Cnty. of</u>
<u>Orange</u>, 315 F. Supp. 2d 434, 452 (S.D.N.Y. 2004); <u>Grosso</u>, 1998
WL 566814, at *11 n.4.

On the other hand, it is unclear what meaning, if any, the
plaintiff has added by suing the individual defendants for the
state law claims not only individually but also in their
official capacities.  <u>See</u> <u>Messina v. Mazzeo</u>, 854 F. Supp. 116,
147 (E.D.N.Y. 1994) (refusing to recognize, for statute of
limitation purposes, that state law claims made against police
officers in their official capacities were claims made against

the city).  The parties do not dispute that the individual defendants were acting in their scope of employment and were thus carrying out official duties when they allegedly committed the torts.  (Tr. at 39; Defs.' Mem at 24, 25.)  The plaintiff has also sued the City and the DOE in each of the counts where the individual defendants are sued personally.  The statements that the individual defendants are sued with state law "in their official capacity," appear to be meaningless surplusage and there is no reason to strike these allegations at this time.

## XIII.

To summarize, the claims that have not been withdrawn and have survived the motion to dismiss are as follows:

1. Count I (false arrest under § 1983) against defendants Kwait, Kim-Ross, Maldonado, and Granshaw;

2. Count IV (deprivation of due process under § 1983) against all individual DOE defendants and against the DOE, based on deprivation of the plaintiff's property interest in public education in violation of substantive due process;

3. Count V (excessive force under § 1983) against defendant Granshaw;

4. Count VI (§ 1983 conspiracy) against all individual defendants, except Konstan;

5. Count X (violation of Title VI) against the DOE;

6. Counts XIV and XV (state law false arrest and false imprisonment) against defendants Kwait, Kim-Ross, Maldonado, and Granshaw, and against the City and the DOE;

7. Count XVI (state law malicious prosecution) against all individual DOE defendants and against the DOE;

8. Count XVII (state law battery) against the individual NYPD defendants and against the City; and

9. Count XVIII (state law IIED) against the individual DOE defendants and the DOE.


## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part.  The Clerk is directed to close all pending motions.**

SO ORDERED.

Dated:    New York, New York
          September 30, 2013              _____
                                                  /s/
                                          John G. Koeltl
                                   United States District Judge